WARREN E. CHENEY et al., Respondents, *v.* THE TROY HOSPITAL ASSOCIATION, Appellant.

JOHN MAHONEY, Respondent, *v.* THE SAME, Appellant.

LEMUEL B. GREGORY et al., Respondents, *v.* THE SAME, Appellant.

JOHN DON, Respondent, *v.* THE SAME, Appellant.

JOHN L. MESSER, Respondent, *v.* THE SAME, Appellant.

*It seems,* that the provisions of the mechanic's lien law of 1865 for the county of Rensselaer (chap. 778, Laws of 1865, published in vol. 1, Session Laws of 1866, p. 69) relate and apply to every person who does work or furnishes materials towards the erection, alteration or repair of any house or building in said county, without regard to the person upon whose credit the work was done or the materials furnished.

The lien given by said act, where the owner has not himself contracted the debt for which the lien is created and sought to be enforced, only extends to the amount due and payable by him at the time of filing the notice creating the lien by the terms of the contract under which the work is being done, adding thereto any sums paid by collusion for the purposes of avoiding the provisions of the act or paid in advance upon the contract.

In an action to enforce a lien created under that act, the owner may, for the purpose of reducing or defeating the claim, avail himself of all matters allowable by way of recoupment or counter-claim arising out of the contract between the owner and the contractor, and which would be available against the contractor, in an action by him, the rights of the parties being determined by the facts existing at the time of the creation of the lien.

(Argued January 11, 1875; decided May term, 1875.)

THESE appeals are from judgments of the General Term of the Supreme Court in the third judicial department, each affirming a judgment in favor of the plaintiff entered upon the report of a referee.

The actions were brought to enforce liens claimed by the

respective plaintiffs on land in the city of Troy belonging to the defendant, under the provisions of the act entitled " An act for the better security of mechanics and others erecting, altering or repairing buildings and furnishing materials therefor, in the county of Rensselaer," passed June 26, 1865, and designated as chapter 778 of the laws passed in that year, but published with the Session Laws of 1866, at page 9 of volume 1. The issues joined in all the actions were tried together.

The referee found the following facts, among others: That, on or about the 20th day of April, 1868, the defendant entered into a contract in writing with one Hugh Rock for the erection upon the premises of portions of a building, as in said contract specified, for the price or sum of $26,200, to be paid in installments as in said contract specified. That, on or about the 1st day of May, 1868, the said Rock entered into a contract with one John Shaughnessy to do a portion of the work. That, upon the credit of said Shaughnessy, the said plaintiffs furnished materials and performed labor at different times, which materials and labor were applied toward the erection of the said building. That the several plaintiffs, within the time prescribed by the said act, served a notice in writing upon the clerk of the said county of Rensselaer, as required by the said act. That the said Shaughnessy did not complete his contract, but abandoned the same before the service and filing of the notices above mentioned. That the work covered by Shaughnessy's contract was completed by said Rock after the abandonment of the contract by Shaughnessy. That said Rock fully performed the work which, by his contract, he agreed to perform. That the defendant, at the time the notices above mentioned were filed, had paid upon the labor performed and material furnished for the building mentioned in said contract $18,000, and no more. That, since the filing of said notices, the defendant has paid to Mr. Rock the sum of $1,500, and no more. That, when Shaughnessy abandoned his contract with Rock, the defendant had paid to Rock all sums then due him under its contract

with him, and that Rock had paid to Shaughnessy all sums due him under the contract between them, and that all such sums were so paid according to the terms of the respective contracts. That there was nothing due from the defendant to Rock, or from Rock to Shaughnessy, at the time of the filing of any of the notices of liens. That nothing had become due at the time of making the referee's report from the defendant, or from said Rock to said Shaughnessy, since the latter abandoned his contract and left the work. And upon said facts he found, as conclusions of law, that each of the plaintiffs had a lien for the amount of his claim, and directed judgment accordingly.

*Esek Cowen* for the appellant. The referee erred in holding that, under chapter 778, Laws of 1865, laborers and material-men who had given credit to a sub-contractor could enforce their claims against the owner, although nothing was due the sub-contractor. (*Cronk* v. *Whittaker*, 1 E. D. Smith, 647; *Allen* v. *Carman*, 1 id., 692; *Spalding* v. *King*, 1 id., 717; *Cusack* v. *Tomlinson*, 1 id., 716; *Doughty* v. *Devlin*, 1 id., 625; *Lum* v. *O'Hara*, 2 id., 560; *Cunningham* v. *James*, 3 id., 650; *Ferguson* v. *Buck*, 4 id., 760; *Carman* v. *McIncrow*, 13 N. Y., 72; *Lumbard* v. *Syr., B. and N. Y. R. R. Co.*, 55 id., 491.)

*Martin I. Townsend* for the respondents. Defendants waived their rights to resist their liability to parties filing liens by paying $1,500 to the contractor after the breach of the contract and the filing of the liens. (*Miner* v. *Hoyt*, 4 Hill, 193; 7 id., 525; *Nolan* v. *Gardner*, 4 E. D. S., 727.)

LOTT, Ch. C. I have reached the conclusion, after a careful examination and full consideration of the provisions of the act under which the plaintiffs have been declared to be entitled to a lien on the land of the defendant for the amounts of their respective recoveries, that the several judgments recovered by them should be reversed.

It is therefore necessary to refer, with particularity, to the several provisions of the act which affect the question. The most material of them are contained in the first, second and third sections, which are in the following terms, viz. :

" SECTION 1. Any person who shall hereafter perform any labor, and any person who shall furnish any materials, in erecting, altering or repairing any house, building, or additions and appurtenances to any house or building, in the county of Rensselaer shall, on filing with the town clerk of the town in which the property is situated, or if situated in the city of Troy, then with the clerk of the county of Rensselaer, the notice prescribed by the fourth section of this act, have a lien for the value of such labor and materials upon such house or building, or additions and appurtenances, and upon the lot, parcel or farm of land upon which the same shall stand, to the extent of the right, title and interest of the owner of the property existing at the time of filing the said notice.

" § 2. Whenever the labor performed and materials furnished shall be upon the credit of any contractor who shall have made a contract therefor with the owner, or his agent, of the property, or upon the credit of any sub-contractor or assignee of any contractor or sub-contractor, the provisions of this act shall not oblige the owner, or his agent, of the property to pay for or on account of any labor performed or materials furnished for such house, building or additions and appurtenances any greater sum or amount than the price stipulated and agreed to be paid therefor in and by said contract, except as in the next section provided.

" § 3. If the owner, or his agent, of any house, building, additions and appurtenances erected, altered or repaired by any contract, express or implied, shall pay to any person, on such contract, by collusion, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract, and the amount still due the contractor or his assignee, after such payment has been made, shall be insufficient to satisfy the demands made in conformity to the provisions of this act, the owner or his agent shall be liable to the amount

that would have been due and owing to said contractor, sub-contractor, laborer or persons furnishing materials at the time of the filing of the notice mentioned in the first section of this act, in the same manner as if no such payment had been made."

The fourth section (referred to in the first as prescribing the notice required to be filed as the prerequisite and basis of the lien created and given by the act), declares and directs when and where such notice shall be filed, and upon whom it shall be served, what it shall contain, and what shall be done by the clerk of the town or the county, on whom it shall be served and with whom it is filed, to perfect the lien and make it effective. As the referee has found that all the requirements of that section have been complied with, it is unnecessary to state specifically or more particularly what they are.

Some other provisions of the act will hereafter be referred to in giving a construction to the three sections above set forth.

The first question to be considered is, whether the act relates and applies to every person who does work or furnishes materials toward the erection, alteration or repair of any house, buildings, or additions and appurtenances thereto, in the county of Rensselaer. The terms of the first section are general, and sufficiently comprehensive to give it such a construction. It declares that " any person who shall hereafter perform any labor, and any person who shall furnish any materials " for such object, shall have a lien for the value thereof to the extent therein specified. There is no declaration or specification requiring or indicating that the debt for which the lien is given shall be contracted on the credit of the owner, or that of the contractor or any other designated person ; and there is nothing in the act from which any limitation or restriction in that respect can be implied.

Assuming, then, that its provisions include every person performing such labor or furnishing such materials, the material and more difficult question to be determined is the extent of the lien which they are intended to provide, and for that

purpose we must again refer to the first section and examine it in connection with the subsequent sections of the act, and especially the second and third. The language of that (the first) section is, as I have before stated, general. If construed by itself, the lien would extend to the *full value* of the labor performed and the materials furnished without any deduction or credit for payments made on account thereof, and if the debt was contracted on the credit of a contractor or any other person than the owner himself it might also be operative and effective " to the extent of the right, title and interest" of such owner existing at the time of filing the notice required to create it, irrespective of the question whether any money was then due or was to become due from him to the party with whom he had contracted for the erection, alteration or repair of "the house, building or additions and appurtenances" thereto, on which the claimant had done work or furnished materials. That general language is, however, qualified by the subsequent provisions of the act. The sixth and seventh sections authorize an action to be brought by a claimant to enforce his lien, and it is therein declared that it shall be commenced by the service on the owner or his agent of a summons, to which shall be annexed a bill of particulars of the amount claimed to be due to him, duly verified by his oath, to the effect that it is in all respects just and true. The second and third sections also limit the liability of the owner whenever the labor performed and materials furnished shall be upon the credit of any contractor who shall have made a contract therefor with the owner or his agent, or upon the credit of any sub-contractor, or an assignee of either the contractor or sub-contractor, by declaring that the provisions of the act shall not in such case oblige the owner or his agent to pay for or on account of any such labor or materials "any greater sum or amount than the price stipulated and agreed to be paid therefor in and by said contract," except or unless a payment shall have been made thereon by collusion, for the purpose of avoiding the provisions of the act or in advance of the terms of the contract, and then if the amount still due the contractor

or his assignee, after such payment shall have been so made, shall be insufficient to satisfy the demands made in conformity to the provisions of the act, the owner or his agent shall be liable to the amount that would have been *due and owing* to such contractor or other claimant in the same manner as if no such payment had been made. It is evident from those provisions that the owner's liability, when he himself or his agent has not contracted the debt for which the lien . is to be enforced, cannot extend beyond the amount unpaid on the sum or price so stipulated or agreed to be paid by him in and by his contract, including in that amount payments by collusion or in advance that may have been made as above mentioned. Although the provisions in the said second and third sections do not declare that the owner's property, on which the lien is given, shall or may be .chargeable to the amount so remaining unpaid, it· is· fairly and clearly inferable therefrom that there may, on the proof of proper facts, be a charge or liability to that extent.

It then remains to be considered in what case it may arise. It is claimed on behalf of the respondents by their counsel, in his clearly expressed language, that "the object of the statute was to indemnify '*any person*' who should perform 'any labor' or should 'furnish any materials' in the erecting, altering or repairing any house, building, and give such mechanic or person an *absolute lien* for such labor and materials upon the 'lot, parcel or farm of land' for the labor and materials furnished;" that the "portion of the enactment which is designed for the benefit of the mechanic or 'person' filing the lien, is complete in the first section and gives the mechanic or 'person' filing the lien absolute security for his pay for labor or materials actually furnished," and that the "second section was enacted for the protection of the owner who is building any 'house or building' upon the land, and is simply designed to protect him from having to pay, or when he has honestly made any payment, upon the building contract before the lien has been filed," * * * and that such protection "is the only limitation designed to be placed upon the

absolute security given by the first section to the party filing
the lien." The effect of that claim, if valid and tenable, would
be to make the owner liable for the *whole* sum stipulated and
agreed to be paid under the contract, after crediting or allow-
ing thereon *bona fide* payments before the lien was created,
irrespective of the question whether any balance was at that
time due or thereafter became due. Such a construction
would subject and charge the land of the owner to the *full
extent* of the contract-*price*, if necessary to pay and discharge
such lien, although nothing further should be done by the
contractor toward the completion or fulfillment of his con-
tract, and would be manifestly unjust. It would impose a
liability on him to satisfy debts which he never contracted or
agreed to assume or discharge. Such a liability is not, in
express terms, declared or fairly inferable from the terms,
scope or object of the act. It is inconsistent with, and in
violation of, every principle of right and justice that one per-
son should, without any obligation or contract entered into by
him and without his consent, be obliged to pay the debts of
another, and it will not be assumed that it was intended to be
imposed without a clear declaration of such intent. There
may be cases where payments to a small amount may prop-
erly be made collectible and enforceable from a fund in the
hands of a party, due and payable to his creditor for debts
due from the latter to his laborers and workmen who may be
presumed not to have sufficient knowledge and ability to pro-
tect themselves or secure such payment by their own action,
but there is nothing that requires, or in my opinion justifies,
the enactment of laws conferring special protection to mate-
rial-men, voluntarily furnishing materials to a contractor on
credit, by incumbering the land of an owner who has entered
into a contract with such contractor for the erection of
a building on such land. Laws of that character seriously
interfere with the alienation of such land and create great
difficulty and embarrassment in procuring loans to be secured
by a mortgage thereon. There is no reason why such a class
of creditors should be entitled to the guardianship and aid of

the State by granting them a security for their debts on the lands of another against his will and in restraint of the free enjoyment thereof; and there is nothing in the act in question which calls for or justifies the extension of its provisions beyond the cases clearly specified therein, and the construction claimed for it, on behalf of the respondents, is unwarranted thereby. The most liberal effect that can be properly given to it is, that the lien shall be effectual and may be enforceable to the extent of the amount actually due and payable at the time of filing the notice referred to in the first section; and that it was intended to be limited to that amount is, I think, apparent from the following considerations suggested by the provisions of the act:

First. The first section limits the lien to the extent of the right, title and interest of the owner at the *time of filing* the notice required to create it.

Second. The third section clearly indicates that the liability of the owner and the charge on his land is to be limited to the sum due when the notice of lien is filed, by declaring that if the amount *still due* to the contractor, after a payment, by collusion, for the purpose of avoiding the provisions of the act, or in *advance* of the *terms* of the contract, shall be insufficient to satisfy the demands intended to be provided for by the lien, then, and in that case, the owner or his agent shall be liable to the amount that would have been *due* and *owing* to said contractor at the *time* of the *filing* of the notice mentioned in the first section of the act, in the same manner as if no such payments had been made.

Third. The declaration, in the second section, that the provisions of the act shall not oblige the owner, in case the debt referred to therein is not incurred on his credit, to pay any greater sum or amount than " the price stipulated and agreed to be paid therefor in and by said contract," fairly and, as I think, necessarily refers to the terms of payment and all the conditions on which such price is payable; and the exception mentioned therein, referring to the amount that *would* have been *due* and *owing* at the *time of filing* the notice

claiming a lien, by necessary implication, shows that the entire fund was not subjected to a more enlarged or other liability, but, on the contrary, that the object of the exception was to continue a liability for the amount that would have been due and owing at the time of creating the lien, if a payment by collusion or *in advance of the terms* of the contract had not been made. The reference to that time, to the amount *then* due and owing, and to the *terms* of the contract, in connection with the declaration in the second section, indicate that such declaration was not intended, by its general terms, to declare an absolute liability for the entire price stipulated or agreed to be paid, or for the balance thereof remaining unpaid, without regard to the time or terms or qualifications prescribed in the contract as to the payment of such price.

Third. The sixth section of the act provides that the summons, by the service of which the action authorized by it is to be commenced against the owner, shall require him to appear and answer, and serve a copy of such answer, "together with a notice of any set-off that he may have," within a specified time, on the claimant or his attorney; and the next section declares that such owner shall, within that time, serve "his answer and notice of set-off, if any he has, duly verified by the oath of the owner, or his agent or contractor, to the effect that the same is in all respects just and true." Such action may be commenced at any time after the service of the notice required in the fourth section to be filed and served to make the lien provided for by the act effective. After issue is joined therein, by the service of an answer with a bill of particulars of set-off, there is provision made for bringing it to trial; and the fourteenth section declares that "whenever a judgment shall be rendered against the owner, and in favor of any person for the performance of any labor, or for the furnishing of any materials, and the owner has funds in his possession due to the contractor, the costs and proceedings shall be deducted from such funds, unless otherwise directed by the court in which the action is brought."

The twenty-second section provides that all liens created by the act may be discharged "by an affidavit of the service of a notice from the owner or his agent, attorney, contractor or sub-contractor, to the claimant, requiring such claimant to commence an action for the enforcement of said lien within twenty days after the service of said notice, and the failure of said claimant to commence an action as aforesaid."

The term "set-off," as used in the sections to which I have referred, is sufficiently comprehensive to allow any debt or claim, which is the matter of set-off, to be deducted in defeating or reducing the claimant's demand, and to authorize such allowance, whether the debt or claim arises on matters existing between the owner and his contractor, or between the claimant and the party on whose credit the debt claimed to be due to such claimant was contracted; but if there be any doubt whether the term admits of such a general application, there can be none that it properly includes all matters allowable in reduction of the amount claimed, by way of recoupment or counter-claim, which have arisen out of or resulted from or under the contract between the owner and his contractor, its execution or the non-performance of its provisions by either party; and as the action for the enforcement of the lien may be voluntarily commenced by the claimant at any time after the filing and service of the notice claiming a lien, and its commencement may be compelled by the notice authorized to be given for that purpose by the twenty-second section, to which reference has been made, it appears to me clear that the rights of the parties are to be determined by the facts existing at the time of the creation of the lien, and that no recovery whatever can be had beyond the amount, if any, payable at that time. The claimant can have no better right of recovery from the owner than the contractor with him possessed. He may be considered as being substituted in the place of the contractor, or an assignee of his demand, to the extent of his debt, but subject to the same defences, or grounds for reduction, which the owner could have interposed in an action against him by the con-

tractor himself.    The views above expressed are in accordance with the general principle that has been adopted in the different authoritative decisions that have been made by the courts in construing the different lien laws to which our attention has been directed or which have come to our notice, and are believed to give a proper construction to the act in question.

Assuming, then, that such construction is correct, it only remains to be considered whether the judgments recovered by the plaintiffs in the several actions brought by them, or in any or either of them, were warranted or authorized by the facts found by the referee.    That question is easily and soon disposed of.    It appears by the findings of the referee that there was nothing due at the time of filing any of the notices of lien from the defendant to Rock, the party with whom it contracted for the work, toward the completion or performance of which the plaintiffs furnished their materials or performed labor, or from Rock to Shaughnessy, his sub-contractor, on whose credit such materials were furnished or labor was performed; and although the plaintiffs are included within the class of persons who are entitled to the benefits conferred by the act in question, they were, neither of them, entitled to a recovery, because there was nothing, as before stated, due from the defendant to Rock, its contractor, when they filed their notice of the claim on which their right to a lien on the defendant's land was founded.

On that ground the judgments must be reversed and a new trial must be ordered in each action, costs to abide the event.

All concur.

Judgments reversed.