ANDREW J. POST et al., Appellants, *v.* GEORGE W. CAMPBELL et al., Respondents, and PATRICK H. MURRAY, Appellant.

Under the provisions of the mechanic's lien law of 1862, for Kings and Queens counties (§ 1, chap. 478, Laws of 1862), which directs the disallowing as against lienors of any payment made by the owner " by collusion, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract," payments made in advance, although without fraud or collusion, cannot be allowed.

The statute, however, was intended to protect the lienor against payments made to the contractor or other persons to the prejudice of the lienor, and where payments in advance were made to him on account of the work or materials for which he claims a lien, he will not be permitted to dispute the right of the owner to have them credited because they were made too soon.

*It seems,* that under said act a lienor is only entitled to the value of materials and work performed within three months next preceding the filing of the notice of lien.

In an action by a sub-contractor to enforce a lien under said act, plaintiffs claimed and were allowed, by the referee, $4,350, and interest. The referee found that the value of the work performed by plaintiffs within three months preceding the filing of notice was $1,077.17. The last installment on plaintiffs' contract was $3,350, payable ten days after the completion of the work. *Held,* that conceding the lien could be established as to the last installment by filing a notice within three months after the completion of the work, on the ground that it was not earned until

such completion, this did not justify the including in the judgment work done previous to the three months and not embraced in that install-ment.

*Post* v. *Campbell* (18 Hun, 51), affirmed; the principle, however, there enunciated overruled.

(Argued September 30, 1880 ; decided January 18, 1881.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, made June 14, 1879, reversing a judgment in favor of plaintiffs and defendant Murray, entered upon the report of a referee. (Reported below, 18 Hun, 51.)

This action was brought by plaintiffs, as sub-contractors, to foreclose a mechanic's lien upon property in the city of Brooklyn, claimed to have been acquired under the lien law applicable to the counties of Kings and Queens (chap. 478, Laws of 1862).

The facts pertinent to the questions discussed are stated in the opinion.

*William G. Wilson* for (plaintiffs) appellants. The plaintiffs' notice of lien was filed within the time required by law. (Chap. 478 of the Laws of 1862, § 3 ; *Haden* v. *Budensick*, 6 Daly, 3.) The owners of the property are not protected from lien by their payment in advance to the principal contractor. (*Cheney* v. *Troy Hospital Association*, 65 N. Y. 282, 288.)

*L. Laflin Kellogg* for appellant P. H. Murray. The defendants, Campbell and Thayer, are liable on the ground that payments were made by them in advance before they were due, under their contract with Smith. (Chap. 478, Laws of 1862.) It is not necessary to show collusion when payments are made in advance. (*In re Squires*, 12 Abb. Pr. 38 ; *Bandmann* v. *Kreischer*, August 14, 1871, General Term of City Court of Brooklyn ; *White* v. *Stansberry*, March 29, 1871, General Term, City Court ; *Cheney* v. *Troy Hospital Association*, 65 N. Y. 282.) It is not necessary that all the work

under an entire contract should be done within three months of the filing. (*Hadden* v. *Buddensick*, 6 Daly, 3.)

*T. Mitchell Tyng* for respondents. The payments which the respondents made to their main contractor were all made in good faith, and without collusion, more than three months before either of the claimants had filed a notice of lien or served a copy thereof, and they are entitled to have them allowed. (Chap. 478, Laws of 1862; 3 R. S. [6th ed.] 797; id. 798; *Payne* v. *Wilson*, 74 N. Y. 348, 355; Kneeland on Mechanics' Liens, pp. 125, 126, § 112; *Schneider* v. *Hobein*, 41 How. 232; *Thompson* v. *Yates*, 28 id. 142; *Lombard* v. *Syracuse, etc., R. R.*, 55 N. Y. 491; *Crane* v. *Genin*, 60 id. 127; *Redburn* v. *Seneca L. G. & W. Co.*, 67 id. 215; *Hall* v. *Sheehan*, 69 id. 918.) In no event could the claimants, under section 3 of the act in question, file or sustain liens for work, labor and materials which were not performed and furnished within three months prior to the date on which they respectively filed their notices of lien. (*Spencer* v. *Barnett*, 35 N. Y. 94; *Lilley* v. *Hotel Co.*, 9 Hun, 424.)

Rapallo, J. We concur in the conclusion of the learned referee in respect to the construction of the lien law applicable to Kings and Queens counties (Laws of 1862, chap. 478, § 1), which provides for disallowing as against lienors any payment made " by collusion, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract." We think that the intention of this provision was to exclude payments made either by collusion or in advance of the terms of the contract. It is, perhaps, possible to construe the provision so as to make the word " collusion " apply both to payments made for the purpose of evading the act and to payments made in advance, but we think the more natural construction of the sentence is that payments made by collusion for the purpose of evading the act constitute one class of payments to be disallowed, and payments made in advance of the terms of the con-

tract constitute another class. It can hardly be doubted that this was the intention of the act, when we consider its general scheme, and that upon which other similar acts are framed. The general purpose of all these acts is to constitute the payments stipulated to be made by the owner to the contractor, a fund (Laws of 1830, chap. 330, § 4) for the protection of material-men and sub-contractors or mechanics, whose materials and labor actually produce the building, and go to entitle the contractor to his payments, and these laws provide the machinery by which such sub-contractors, mechanics and materialmen may impound these payments in the hands of the owner and acquire a lien on the property for the sums unpaid on the contract. The contract and the payments to become due thereunder thus constitute the security of the mechanics employed by the contractor, and they furnish work and materials on the faith thereof. These payments are usually made to fall due at the various stages of the progress of the work, and those employed or furnishing materials to earn the payments, if they inform themselves of the terms of the contract, as they should do, will always know when the payments accrue. It is manifest that if the owner were at liberty to anticipate the payments, the security of the mechanics and materialmen would be very shadowy; for when they came to file their notices of lien, they might find that all the payments had been anticipated and that there was nothing due or to become due which they could impound. To provide against this danger, payments in advance have been provided against in most of the laws upon this subject. It cannot be material whether the payments in advance are made for any fraudulent purpose, or by collusion, or innocently, so long as they are voluntary. The effect is the same upon those who are looking to the accruing payments as their security. The sub-contractor who is relying upon the right which the lien law gives him to impound all payments which are due when he performs his work, or which may thereafter accrue according to the terms of the contract, might, if such advances were permissible, find when his work is done that the fund upon which he relied has disappeared.

The damage to him is the same whatever may have been the motive of the advance.

The various lien laws which have been passed from time to time differ in their provisions. Some of them provide only against collusive payments, others provide also against payments in advance; but when provision is made against payments in advance, I find none which require that such payments in advance be made by collusion or fraudulently. The act of 1830, applicable to the city of New York, chapter 330, section 5, disallows as against the lienor a payment to the contractor "by collusion *or otherwise*, in advance of the sum due on the contract." The act of 1852, applicable to Westchester and other counties, chapter 384, section 3, contains the same provision in the same language. The act of 1854, chapter 402, section 3, provides against payments on the contract by the owner "by collusion for the purpose of avoiding the provisions of the act, or before the right of any claimant to file a note of lien has expired, or in advance of the terms of any contract." The language of this act is very similar to that of the act of 1862, now under review, but it seems quite plain that payments in advance are a prohibited class of payments distinct from collusive payments. The act of 1854 was amended by chapter 558 of the Laws of 1869, and made applicable to all the counties in this State except Erie, Kings, Queens, New York and Onondaga, and was further amended by the act of 1873, chapter 489. Section 3 of the act of 1854 was, by this act of 1873, amended by striking out the provision against payments in advance, leaving in force only a provision against payments "by collusion for the purpose of avoiding or with intent to avoid the provisions of this act." This act did not affect the provision against payments in advance contained in the act of 1862, which applies to Kings and Queens counties, but left that provision in full force. The course of legislation on this subject clearly shows that a distinction was made between collusive payments and payments in advance.

If in the other acts referred to, or in the act of 1862, it was intended to exclude payments in advance only when collusively

made, it is difficult to understand why payments in advance were specified at all, for if made by collusions the language in respect to collusive payments would be ample to cover all fraudulent prepayments.

The case of *Cheney* v. *Troy Hospital Association* (65 N. Y. 282) puts the same construction as that adopted by the learned referee upon precisely similar language used in the Rensselaer county mechanics' lien law, and we think that is its reasonable construction.

Adopting that construction, however, a further question is presented whether the lienor can avail himself of the right to have payments disallowed to the owner on the ground that they were in advance of the terms of the contract, when such payments in advance were made to the lienor himself, on account of the work and materials for which he claims a lien. We think there would be manifest injustice in sustaining such a claim, and permitting the lienor, after having once received a payment from the owner on account of the money coming to the contractor upon his contract, to recover the same money a second time from the owner on the ground that when the payment was made it was not actually due to the contractor, according to the terms of the contract. The statutory provision was intended to protect the lienor against payments made to the contractor or other persons, to the prejudice of the lienor; but where the lienor has himself received the money, he surely ought not to be permitted to dispute the right of the owner to be credited with the payment because it was made too soon. It is true the words of the statute are that if the owner shall pay "any person" by collusion or in advance, and the amount still due the contractor after such payment shall be insufficient to satisfy the demands of the claimants under the lien law, the owner shall be liable for the amount that would be owing to the contractor if no such payment had been made. But in construing the term "any person," it must be understood to mean any person other than the claimant. It could not have been intended that after having received the money himself, as a payment upon the contract, the claimant should be allowed to

claim the same installment again. In the present case the owners had, long before the notice of lien was filed, paid to the contractor and upon his order the whole amount of the contract price of the building and upward of $1,000 in addition, and the referee finds that all these payments were made without collusion and in entire good faith. The last installment payable upon the contract was $5,000, and this was to be paid when the building was completed. On the 9th of February, 1878, and when very little remained to be done in the building, the owners paid to the claimants, Post & McCord, out of this last installment the sum of $2,500, on an order drawn in their favor by the contractor upon the owners. The referee has found that when this draft was paid to the claimants the building had not been fully completed, a small amount of work still remaining to be done, and consequently he has disallowed this payment, as a payment in advance, and included it in the amount found due from the owners to the contractor, for which he has rendered judgment in favor of the claimants, Post & McCord, thus compelling the owners to pay the same amount to them a second time.

We think this was erroneous, and inasmuch as the whole amount of the recovery of Post & McCord cannot be sustained without the disallowance of this payment, the court below was justified in granting a new trial. The case contains all the necessary findings and exceptions to raise the point distinctly.

The respondent further contended before the referee that the claimants were entitled to recover only for the value of the work and materials furnished and performed within three months next preceding the filing of the notice of lien, and such is the provision of the statute. The notice of lien of Post & McCord was filed on the 21st of May, 1878. The whole contract-price of the work, $51,000, and more, had been paid by the owners to the contractors on the 13th of February, 1878. The claimants Post & McCord, by their notice of lien, claimed the sum of $4,350, with interest from May 13, 1878, for work done by them under a sub-contract, by which they were to be paid in installments, the last installment being $3,350, payable

ten days after the completion of the whole work. The referee finds that the value of the work performed by them within the three months immediately preceding the 21st of May, 1878 (the date of the filing of the notice of lien), amounted to $1,077.17. Yet he has rendered judgment against the owners for the full sum claimed, amounting to $4,543.69, with interest, and declaring them entitled to a lien therefor, notwithstanding the objection that the lien was valid only to the extent of the value of the work, etc., done and furnished within the three months.

From the opinion of the referee it appears that he places this conclusion upon the ground that the last installment of the sub-contract did not become payable until within the three months, and that although the point was made that the lien must be limited to the work done within the three months, the point was not specifically taken that the plaintiffs' recovery should be limited to such last installment. It seems to us that the point stated in the opinion to have been taken was sufficient, and that the exception to the conclusion that the plaintiffs are entitled to a lien for $4,543.69 raises the question what should be the amount of the recovery.

Inasmuch as the work done within the three months is found to have been only $1,077.17, it is evident that all the rest of the $4,543.69 must have been earned prior to that time, and that no lien could be obtained therefor unless it be to the extent of the last installment payable on the plaintiffs' sub-contract. And if the referee was right in holding that, as to that installment, the lien could be established on the ground that it was not earned until the completion of the work, and that consequently a lien therefor could be obtained by filing a notice within three months after such completion, still that would not justify him in including in the judgment work previously done and not embraced in that installment. Even if the claim of the defendants that the recovery should be limited to the work actually performed within the three months could be partially answered by showing that the lien might be made to cover the whole of the last installment, they did not

thereby lose the right to except to the allowance of a lien for other work done outside of the three months which could not, upon any theory, be included. The allowance to the plaintiffs of this excess was also, in our judgment, erroneous.

The lien of the claimants Post & McCord was held to be prior to that of the claimant Murray. The allowance of the credit of $2,500 paid to Post & McCord on the 9th February, 1878, would reduce the amount due from the owners, even if all the other prepayments be disallowed them, to a sum insufficient to pay the claim of Post & McCord, and, therefore, no lien existed in favor of the appellant Murray.

The order of the General Term should be affirmed and judgment absolute be rendered against the appellants on their stipulations.

All concur.

Order affirmed and judgment accordingly.