LIND *et al.* *v.* BRAENDER *et al.*

*(Common Pleas of New York City and County, General Term.* December 2, 1889.)

1. MECHANICS' LIENS—ABANDONMENT BY CONTRACTOR—RIGHTS OF SUBCONTRACTORS.
   Where the owner has entered into a contract, and made payments under it, for work done on his building, and the contractor has abandoned the work before completion, it is competent, in an action by subcontractors to enforce their liens, for the owner to prove how much of the work the contractor left undone, and what it has cost to complete it in the manner provided by the contract.

2. SAME—PAYMENT TO CONTRACTOR.
   The mechanic's lien law of 1885, (Laws N. Y. 1885, c. 342, § 2,) which provides that if the owner shall, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract, pay by collusion any money on such contract, and the amount still due shall be insufficient to satisfy the claims, the owners shall be liable to the amount that would have been unpaid had no such payment been made, does not apply, where the owner has made a payment in advance, without collusion.

Appeal from special term.

Action by Oscar Lind, Thomas H. McCracken, George Adie, Medart Bourque, Charles Johnson, August Brown, and Sylvanus Thebedeau against Philip Braender and others, to foreclose a number of mechanics' liens filed by plaintiffs against Philip Braender as owner, and John Walsh as contractor. Defendant Braender was building a number of houses, and in January, 1888, employed John Walsh to do the carpenter work for $1,520, to be paid in three installments, the first of $500, the second of $500, and the third, upon completion of the work, of $520. On May 5, 1888, Walsh stopped the work before finishing it. At this time he had been paid the first two payments, and $250 of the third payment. Plaintiffs were journeymen carpenters, employed by Walsh, and did certain work on defendant's houses for which they were not paid. The action was tried before a referee, who found for plaintiffs, and judgment was entered accordingly. Defendants appeal.

Argued before LARREMORE, C. J., and VAN HOESEN, J.

*Bartlett, Wilson & Hayden,* (*Philip L. Wilson,* of counsel,) for appellants. *Langbein Bros. & Langbein,* (*Leonard L. Langbein,* of counsel,) for respondents.

VAN HOESEN, J. Walsh, the contractor, abandoned the work before it was finished. Exactly how far from completion the building was when Walsh deserted the contract the evidence does not disclose. The defendants attempted to prove by competent evidence how much of the work remained undone, and what the cost of completing the building in the manner provided for by the contract with Walsh actually was, but the referee refused to receive the evidence. This was error, and the defendants' exception to that ruling is of itself enough to call for the reversal of the judgment. In order to ascertain what was due to Walsh it was necessary to learn how much work he had done, and what the value of that work was. Then the amount that the defendants were compelled to expend in finishing what Walsh left incomplete was to be proved. From these *data* a calculation could be made as to how much, if anything, was due to Walsh, and the amount payable to Walsh is the sum that the lienors could recover from the defendants in this action. *Wright* v. *Roberts,* 43 Hun, 413; *Van Clief* v. *Van Vechten,* 1 N. Y. Supp. 99; *Develin* v. *Mack,* 2 Daly, 94; *Cheney* v. *Association,* 65 N. Y. 282.

The referee assumed that, no matter what the defendants had been compelled to lay out in completing Walsh's unfinished contract, the defendants were still liable to pay the original contract price to the subcontractors. That this ruling is erroneous it requires no argument to prove. But, as the referee was led to this conclusion by an erroneous construction of the lien law of 1885,[1] it is proper that this court should express its views upon the section that he undertook to construe. Section 2 of the act provides that if the owner shall, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract, pay, by collusion, any money or other valuable thing on such contract, and the amount still due, or to become due, to the contractor, subcontractor, or assignee, after such payment has been made, shall be insufficient to satisfy the claims made in conformity with the provisions of this act, such owner shall be liable to the amount that would have been unpaid, had no such payment been made. In other words, a payment made in advance of the time fixed for it by the contract, or a payment made for the purpose of evading the operation of the act, shall not be permitted to deprive a subcontractor of what is due to him, if it were made by collusion between the owner and the contractor. A collusive payment, made before the time appointed for it by the contract, or made with intent to evade the lien law, shall be thrown entirely out of consideration in determining how large the

[1] Laws N. Y. 1885, c. 342.

fund is to which the subcontractor may resort for the satisfaction of his lien. We have been urged by the plaintiffs to disregard the words "by collusion," as used in this act, and to construe the section as though the provision read: "If the owner shall, for the purpose of avoiding the operation of this act, or in advance of the terms of any contract, pay any money," etc., "such payment shall not be taken into account:" but we feel that we have no right to do so. Effect must be given to those words "by collusion," and, if they are to be considered at all, they necessarily apply to payments made in advance, as well as to payments made in evasion of the law. Again, we have been urged to interpolate the word "or," so that the section would read; "If the owner, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract, or by collusion, pay any money," and so forth; but we cannot assume any such power. It is said that the court of appeals in *Post* v. *Campbell,* 83 N. Y. 283, gave just such a construction to an act very similar to the lien law of 1885. In that case the court, in construing the Kings county act of 1862, which disallowed payments made "by collusion, for the purpose of avoiding the provisions of the act, or in advance of the terms of the contract," said: "It is perhaps possible to construe the provision so as to make the word ' collusion' apply both to payments made for the purpose of evading the act, and to payments made in advance; but we think the more natural construction of the sentence is that payments made by collusion, for the purpose of evading the act, constitute one class of payments to be disallowed, and payments made in advance * * * constitute another class." The words of the lien law of 1885 are the same as those of the Kings county act, but the arrangement of them is different, and I believe that the change in the collocation of them was deliberately made. The inconvenience resulting from making any payment in advance is highly dangerous to the owner, and must have been felt by laborers, contractors, material-men, and all others whose employment makes them possible lienors. It must have often happened that a contractor could not pay his men, because he could get no advance from the owner. A laborer would feel that an advance payment was not a bad thing when it gave to him his wages on a Saturday night. A collusive payment—that is, a payment made to cheat and defraud him—would be a great evil, but not an advance payment honestly made. Hence it seems to me that the framers of the lien law of 1885 intentionally so altered the position of the words which the court of appeals had construed that, without doing violence to every rule of construction, it is impossible to say that the words "by collusion" do not apply to payments in advance as well as to payments made to evade the act. Both kinds of payment are mentioned, and then follows the provision that, if such payments are made "by collusion," they shall not prejudice subcontractors. It was easy, in construing the Kings county act, to limit the words "by collusion" to the phrase that immediately followed them, namely, "for the purpose of avoiding the provisions," etc., but no such limitation is possible in construing the act of 1885. "By collusion" refers to both kinds of payment, or it does not refer to either. If the payment to Walsh were not made collusively, it ought to have been credited to the defendant. Judgment reversed, and new trial ordered, with costs to abide the event.