SMACK et al. v. CATHEDRAL OF THE INCARNATION OF DIOCESE OF LONG ISLAND et al.

(Supreme Court, Appellate Division, Second Department. June 7, 1898.)

1. MECHANIC'S LIEN—ADVANCE PAYMENT TO SUBCONTRACTOR.
    A building contractor paid to a subcontractor part of the agreed price of material to be delivered by the latter, in advance of the terms of their contract, under which the entire price was to be due when the subcontractor should be ready and able to deliver. A material man, who had undertaken to furnish the material to the subcontractor, thereafter delivered it, and did not file his mechanic's lien for more than three months thereafter. Held, in an action by the material man to foreclose the lien, that under the circumstances he could not have been prejudiced by the advance payment.

2. SAME.
    It seems that under Laws 1885, c. 342, § 2, relating to mechanics' liens, a payment by an owner or contractor in advance of the terms of the contract lays no basis for a claim by a material man, unless it was collusive.

3. SAME.
    It seems that Laws 1885, c. 342, § 2, relating to mechanics' liens, applies to advance payments by a contractor as well as to those by owners.

Appeal from judgment on report of referee.

Action by Robert Smack and Ella McKinley against the Cathedral of the Incarnation of the Diocese of Long Island and others. From a judgment on the report of a referee, plaintiffs appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William S. Bennet, for appellants.

Arthur H. Van Brunt, for respondents.

HATCH, J. The action is to foreclose a mechanic's lien in behalf of the plaintiffs, who are material men, having furnished certain material used in the construction of a power house of the defendant cathedral. The defendant cathedral contracted with the defendants Gillis and Geoghegan, among other things, to construct a power house in connection with the cathedral. The defendants Gillis and Geoghegan entered into a subcontract with the Mahoney Engineering Company to furnish certain materials in connection with said power house. The contract with the engineering company was to deliver on the sidewalk, in the city of New York, the material for which the lien is filed, for and at the agreed price of $435. No time of payment for the material was specified in the contract, nor was the date of delivery fixed. The engineering company contracted with the plaintiffs to furnish this material, and they, having furnished the material, and not being paid therefor, filed the lien which is the subject of foreclosure in this action. The engineering company seems to have been a mere jobbing concern, represented by Frank Mahoney as treasurer and manager; but this fact does not affect the questions involved. The contract was entered into under date of January 29, 1896, and the material was finally completed and ready for delivery by the plaintiffs to the engineering company about April 6th following. It was delivered at Garden City, where the power house was being constructed, about the 1st day of June, 1896. The notice of lien was filed on July 30th of the same year. The engineering company, as is claimed, failed to furnish the materials as contracted for, and, it having failed, the contractors were required to incur an additional expense of $30 by reason of such failure, which they claim to deduct from the amount due to it. It was conceded in the case that the contractors had paid to the engineering company the full amount of the contract price, less the sum of $20 and the $30 incurred by them in completing its contract. It is claimed, however, that the contractors were not protected in the payments which they concededly made to Mahoney, for the reason that such payments were made in advance of the time when they became due under the contract. The referee has found that the contractors, before making the first payment, had been duly notified by the engineering company that the material was ready for delivery, and that before making the second payment such material was completed, and ready for delivery. The referee further found that none of the payments were made by the contractors for the purpose of avoiding the provisions of the mechanic's lien law, or in advance of the terms of the contract between the contractors and the engineering company, or by

collusion. The referee further found that the contractors were entitled to a deduction of $385, the amount of the payments made by them to the engineering company, and the amount of $30 for charges necessarily incurred in the completion of such contract; and that, such sums being deducted from the contract price, there only remained the sum of $20 to which the lien of the plaintiffs attached. The referee found as a conclusion of law that the plaintiffs were only entitled to enforce their lien for the sum of $20. The plaintiffs excepted to such finding, and now claim that the contractors are not to be allowed as against their lien for any payments which were made to the engineering company in advance of the time when such payments became due. It is to be noticed that the contract specifies no time of payment, and no time for delivery of the material. By this contract, therefore, the contractors became bound to pay for the material as soon as the engineering company was ready and able to deliver the same. Benj. Sales, §§ 706, 707; Cook v. Ferral, 13 Wend. 285; Coonley v. Anderson, 1 Hill, 519. It appeared in evidence that the engineering company notified the contractors verbally, on or about March 5, 1896, that the material was ready for delivery, and requested payment in the amount of $235, which the contractors paid, and for which Mahoney receipted. It appears that at the time when this notification was made of readiness to deliver the construction of the material had not been begun. Subsequently, however, its construction was entered upon, and it was ready for delivery on the 6th day of April following. Thereafter, and on April 14, 1896, Mahoney notified the contractors by letter that the material was ready for delivery, and requested payment of $150. The contractors complied with this request to the extent of paying $100, for which the engineering company gave its receipt. Thereafter, and on May 14, 1896, the contractors paid an additional $50, for which the engineering company receipted. At the time of the last two payments it is undisputed that the material was finished and ready for delivery, and at that time it is clear that the engineering company had the right to demand and receive payment, within the authorities already cited. It appears that the contractors had no notice that the plaintiffs were engaged in furnishing the material contracted for by the engineering company, nor does it appear that the plaintiffs had knowledge of the contract or its terms. It is quite evident, therefore, that up to the time when payments were made the equities of the contractors were in all respects equal to the equities of the plaintiffs. Prior to the amendment of the statute, in 1885, in respect of payments, the law provided that payments made by the owner to a contractor "by collusion, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract," were not protected; and in Post v. Campbell, 83 N. Y. 279, it was held that collusion was not necessary in respect of payments made in advance of the terms of the contract, in order to entitle persons furnishing materials to a subcontractor to take advantage thereof; and that such payment could not be allowed as against a material man who had, in proper time, filed his lien. The statute was amended, however, in 1885, and in this respect was made to read: "If the

owner  *  *  *  shall, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract, pay by collusion,  *  *  *  the owner or other person in interest as aforesaid shall be liable to the amount that would have been unpaid to said contractor, sub-contractor or assignee," etc.   Laws 1885, c. 342, § 2. Under the amendment it has been held that the word "collusion," as used in the statute, applies as well to advance payments as to payments made to avoid the act.   Lind v. Braender, 15 Daly, 370, 7 N. Y. Supp. 664.   The referee has found, and upon sufficient evidence to sustain the finding, that there was no collusion between the contractors and the engineering company in making any of the payments, and that the same were made in good faith.   It is, however, claimed that the amendment to the statute applies alone to owners, and does not embrace contractors.   We think that this contention may not be sustained.   There is no reason why such construction should obtain, and the decisions seem to place owners and contractors upon the same footing.   French v. Bauer, 134 N. Y. 548, 32 N. E. 77.   But assuming, however, that collusion is not an essential element, as applied to an advance payment, we do not think the result would be different in this case, as we think the plaintiffs may not take advantage of the first payment made by the contractors, although confessedly at such time the material was not ready for delivery.   The defendants were in no wise prejudiced by reason of this fact, for they subsequently finished their work, and shipped the material to Garden City, and did not file their lien until upwards of three months thereafter; so that in no sense were they prejudiced on account of this payment, and therefore the whole payments were made at a time when the engineering company had the right to demand the same, and when the constructors could not have resisted payment except by showing a breach of contract.   It was said by Judge Rapallo in Post v. Campbell, supra:   "The statutory provision was intended to protect the lienor against payments made to the contractor or other persons to the prejudice of the lienor."   And in Lumbard v. Railway Co., 55 N. Y. 491:   "A party furnishing materials or doing work, relying upon the lien given by statute for security, must examine the contract with the owner; for it is only to the extent of what is due or to become due upon this contract that his lien can attach.   If he furnishes the material or does the work for a subcontractor, in like reliance, he should not only examine the contract with the owner, but also that of the subcontractor; for, if the subcontractor fails to perform his contract, so that nothing becomes payable thereon, or is paid in full according to its terms in case of performance, there can be no lien."   This case and its language were cited with approval in French v. Bauer, supra.   Clearly, then, when the material was delivered, the payment became due by the terms of the contract; and it matters not that some of it had been paid before it could have been legally demanded. In any event, plaintiffs were in no wise prejudiced on account of such payment.   In the present case, if the plaintiffs had made inquiry they would have discovered what the terms of the contract were, and would have seen that the contractors were required to

make payment, and therefore they cannot complain.   So that, if the
element of ·collusion be held not to apply to payments made in ad-
vance, still the result would be the same.   Nothing which is con-
tained in Hilton Bridge Const. Co. v. New York Cent. & H. R. R.
Co., 145 N. Y. 390, 40 N. E. 86, affects this result.   The case there
turned upon a question of practice,—as to who were the proper par-
ties to be brought in; and this was the only point determined which
was germane to a decision in that case.   It is evident that the court
was mistaken so far as it referred to the construction of the act of
1885, as it refers to the case of Post v. Campbell as construing such
act.   Post v. Campbell, however, construed the act of 1862, and
was decided in 1881, before the amendment took effect.   It conse-
quently cannot be regarded as an authority upon the construction of
the law of 1885.   The language used in such opinion, therefore, con-
struing the effect of the advance payments, cannot be held to apply
to the present statute.   But, were it otherwise, the judgment must
still be for the defendant, as we have seen.   The allowance for expense
incurred in completing the contract of the engineering company was
properly allowed.   Lind v. Braender, supra.

It follows that the judgment should be affirmed, with costs.   All
concur.