LAWRENCE v. DAWSON et al.

(Supreme Court, Appellate Division, Second Department. November 22, 1898.)

1. MECHANICS' LIENS—SUBCONTRACTORS—LIABILITY OF OWNER FOR COLLUSIVE PAYMENTS.

　　The provision of the mechanic's lien law (Laws 1897, c. 418, § 7) that "any payment by the owner to a contractor upon a contract for the improvement of real property, made prior to the time when by the terms of the contract such payment becomes due for the purpose of avoiding the provisions of" such law, "shall be of no effect as against the lien of a subcontractor, laborer or materialman under such contract created before such payment actually becomes due," embraces payments by the principal contractor as well as payments by the owner.

2. SAME—ENFORCEMENT OF LIEN—SUFFICIENCY OF EVIDENCE.

　　In an action by a material man for the enforcement of his lien, as against the principal contractors for a certain building, it appeared that

plaintiff sold materials to a subcontractor, who had undertaken to furnish materials and to perform certain work in the erection of the building in question under an agreement with such principal contractors which provided for the retention by them of a certain percentage of the value of the work done by him until the final 'completion thereof; that plaintiff contemplated enforcing his claim for such materials by filing a lien against the property, but was induced to forbear doing so by representations by the principal contractors that such percentage, which exceeded the amount due plaintiff, would be retained until final payment; and that such contractors thereupon paid to other material men the amount due them from such subcontractor, and also paid to such subcontractor, in advance of the time when it was payable, the sum which they had so retained. *Held*, that a finding that such advance payment to such subcontractor was not made for the purpose of avoiding the provisions of the mechanic's lien law (Laws 1897, c. 418, art. 1), but was made in good faith, was not justified by the evidence.

Appeal from special term, Westchester county.

Action by James V. Lawrence, as sole surviving partner of the firm of Lawrence Bros., against John Dawson and William Archer, impleaded, etc. From a judgment dismissing the complaint as to defendants Dawson and Archer, and adjudging that the mechanic's lien filed by plaintiff was not valid, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, and WOODWARD, JJ.

Ralph Earl Prime, Jr., for appellant.
Frank M. Tichenor, for respondents.

WILLARD BARTLETT, J. This is a mechanic's lien suit, in which we are concerned only with a controversy between James V. Lawrence, as surviving partner of the firm of Lawrence Bros., on the one hand, and John Dawson and William Archer, composing the firm of Dawson & Archer, on the other. The controversy grows out of the construction of a school house in the city of Mt. Vernon. Dawson & Archer were the contractors with the municipality for the erection of the building. They entered into a subcontract with one John Burden, under which he agreed to furnish all the materials required for the carpenter work, and to perform the carpenter work required by the terms of the principal contract. The plaintiff sold and furnished building materials to Burden in such quantity that on September 10, 1897, about $2,500 or $2,700 was due to him for such materials. In order to enforce his claim for this amount, the plaintiff at that time contemplated filing a mechanic's lien against the school property; but, at an interview between his agent and Burden and the defendant Dawson, Burden and Dawson stated to the plaintiff's agent, as was the fact, that the terms of Burden's subcontract provided for and required the retention by Dawson & Archer of 15 per cent. of the value of all work done under said subcontract, until final payment and completion, "and that said moneys had been and would be retained, and said provisions and terms of said contract as to payment kept and observed, by the defendants, Dawson & Archer." Relying upon these representations, the plaintiff refrained for the time being from filing any lien. On the very day of the interview, however,

Dawson & Archer paid out $3,000 to material men (Hartmann Bros.), between whom and Dawson & Archer there appears to have been no relation except such as grew out of the fact that Hartmann Bros. had supplied material to Burden which he put into the school building. Dawson & Archer also subsequently paid to Burden $2,274.30, in advance of the terms of their subcontract with him; that amount, representing the 15 per cent. already mentioned, not being payable, under the terms of the contract, before January 1, 1898. After these payments had been made, and on October 28, 1897, when a balance of $1,825.92 remained due from Burden to the plaintiff, the plaintiff duly filed his lien.

In the statement of the facts thus far made, nothing has been included which was not found by the learned trial judge; but notwithstanding the representations which have been recited, and notwithstanding the plaintiff's reliance thereon, which led him to withhold the filing of his lien for more than six weeks, the learned trial judge holds that the facts and circumstances are not sufficient to justify a finding that the advance payment of the 15 per cent. to the subcontractor was made for the purpose of avoiding the provisions of the mechanic's lien law; and he does find, in fact, that such payment was not so made, but was made in good faith. I think this finding is clearly against the weight of evidence, and should not be sustained. The existing lien law contains the following provision:

"Any payment by the owner to a contractor upon a contract for the improvement of real property, made prior to the time when by the terms of the contract such payment becomes due for the purpose of avoiding the provisions of this article, shall be of no effect as against the lien of a subcontractor, laborer or materialman under such contract created before such payment actually becomes due." Laws 1897, c. 418, § 7.

The opinion and decision in the court below are evidently based upon the assumption that this provision applies as well to any payment by a contractor to a subcontractor as to any payment by the owner to the principal contractor. Upon the present appeal, however, the learned counsel for the respondents denies that this is the correct construction of the provision which has been quoted, and declares that there is no prohibition in the mechanic's lien law against a contractor paying his subcontractor in advance of the terms prescribed by the contract between them. The provision in question is contained in section 7 of the statute, which is included in article 1; and the twenty-second section declares that that article is to be construed liberally, to secure the beneficial interests and purposes thereof. In view of the construction which we gave to the provision of the former mechanic's lien law, which was under consideration in Smack v. Cathedral, 31 App. Div. 559, 52 N. Y. Supp. 168, I am of the opinion that section 7 of the present lien law should be held to embrace payments by the principal contractor as well as payments by the owner. It is to be noted that the contract in the present case between Dawson & Archer and Burden itself refers to Dawson & Archer as the owners; for it provides that should the contractor (meaning Burden), at any time during the progress of the work, refuse or neglect to supply a sufficiency of materials or workmen, the

owner (which must mean Dawson & Archer, and cannot possibly mean anybody else, in this subcontract between these parties) shall have the power to finish the work, and deduct the expense from the amount of the contract. For the purposes of this litigation, therefore, the parties have themselves voluntarily assumed the characters of owner and contractor, respectively; and it is certainly not a forced construction of this provision of the lien law, so far as they are concerned, to apply it to the advance payments which were made by Dawson & Archer to Burden.

The circumstances of the interview of September 10, 1897, must be considered somewhat in detail, in order to throw light on the purpose which brought about the advance payment. There were present at that conversation Percy Young, the agent of the plaintiff; John Dawson, one of the contractors; and John Burden, the subcontractor. Mr. Young was desirous to procure a payment on account of the plaintiff's claim of $2,500 or $2,700, but Mr. Dawson was unwilling then to pay more than $1,000 cash, whereupon, says Mr. Young in his testimony:

"I asked him if the terms of the contract with Mr. Burden were the same in regard to the payments as the terms of the contract with the board of education; and he said they were, and he stated that the 15 per cent. being held back would preclude his paying us the full amount in cash."

Burden, when examined in reference to the same conversation, denied that anything was said about the terms either of his contract with Dawson & Archer or their contract with the board of education, or that anything was said about 15 per cent. being retained under their contract. He did testify, however, that, when Mr. Young expressed the opinion that the plaintiff ought to get more money, he (Burden) told Mr. Young that he had no claim on Dawson & Archer for more cash at that time. Dawson, who was also called as a witness, corroborated Burden in the statement that nothing was said about the contracts, or retaining 15 per cent. Now, it is to be noted that the learned trial judge did not believe what Burden and Dawson said on this subject; for he found, in the most distinct manner, that the representations alleged in the complaint in regard to the retention of the 15 per cent. were made by Burden and Dawson to the plaintiff's agent on the 10th day of September, 1897. The sole reason, therefore, which the record discloses in support of his conclusion that the advance payment was not made in order to evade the provisions of the mechanic's lien law, must be because Dawson swore, in answer to a leading question, that he did not make the payments with the intent of evading those provisions. It does not seem to me that this declaration of intent ought to be allowed to overcome the plain inference to the contrary which is required by the facts actually found at special term. It is impossible to perceive what was the purpose of assuring the plaintiff's agent that the 15 per cent. would be retained, unless it was to prevent the plaintiff from then filing a lien which would have reached the $3,000 that they paid out to Hartmann Bros. on the same day; and no reason whatever is assigned for making that prompt payment to Hartmann Bros., instead of paying the claim of the plaintiff. The payment thereafter to Burden of the 15 per

cent. and a little more left little or nothing in the hands of Dawson & Archer to which the plaintiff's lien could attach, if that advance payment was effective as against the plaintiff; and no reason is suggested why it was made, unless it be the statement of Burden, also in response to a leading question, that he could not have gone on and completed the contract, unless he had received the payments which he did receive from Dawson & Archer. The character of this statement may be appreciated when we remember that the witness did not complete the contract at all, and that Dawson & Archer are before the court claiming a credit of upwards of $800 for having completed it themselves. The accuracy of Burden's account of the transactions must also be considered in the light of his own statement to Young on September 10, 1896, that he had no claim upon Dawson & Archer for more cash than $1,000 at that time, when it turns out that they thereafter paid a $3,000 debt of his to Hartmann Bros. by a check dated the same day. The case is quite different from Weisemair v. City of Buffalo, 57 Hun, 48, 10 N. Y. Supp. 569, where it was held that a similar provision for the retention by the city of 20 per cent. of the amount due on the contract did not inure to the benefit of the contractor or his employés, but was inserted for the sole benefit of the city, which alone could claim any rights under it. Here, however, the provision for the retention of the percentage was in the agreement also between the contractor and the subcontractor; and it would be manifestly unjust to hold that it availed nothing to a material man having a claim against the subcontractor for materials furnished, when he had been induced by both parties to the subcontract to postpone the enforcement of that claim by representations that such percentage would be retained. The respondents also cite McMillan v. Wine Co., 5 Hun, 12, and Cheney v. Association, 65 N. Y. 282, in support of the proposition that where the contract has been abandoned, and the contractor (or, in a case like the present, the subcontractor) has been fully paid for all work done prior to the time the lien is filed, the lien must fail, because nothing can thereafter be due the contractor. This rule, however, has no application to a case in which the full payment can be made out only by including in the computation sums not due when paid, which have been paid in advance to evade the provisions of the mechanic's lien law.

There is no question of forfeiture in the case. None was raised in the pleadings, and no attempt to enforce any forfeiture was made by the contractors, who elected to go on and finish the uncompleted work of the subcontractor at his expense. It is not necessary to pass now upon the points raised by the appellant as to the payment of the $3,000 to Hartmann Bros. being ineffectual because not shown to have been made with Burden's authority. The proof in regard to this payment evidently does not disclose all the facts, and may be supplemented on the new trial which must be ordered on account of the erroneous conclusion reached on the other branch of the case.

Judgment, so far as appealed from, reversed, and new trial granted; costs to abide the event. All concur.

CULLEN, J. (concurring). Without expressing any opinion on the question of fact whether the payments were made by defendants Dawson and Archer with intent to avoid and defeat the lien of the plaintiff, I concur in reversal on the ground that there is nothing in the evidence to justify charging the $3,000 paid to Hartmann Bros. as a payment on account of the defendant Burden.