THOMAS HAGAN, Respondent, *against* THE AMERICAN BAPTIST HOME MISSIONARY SOCIETY *et al.*, Appellants.

(Decided February 7th, 1887.)

A mechanic having entered into a contract with a sub-contractor after the original agreement between the sub-contractor and the principal contractor had been modified, could not, under the mechanic's lien laws in force before the act of 1885 (L. 1885 c. 342), file and enforce a lien for his work where there had been a settlement and payment in good faith between the contractor and sub-contractor of all that was due the latter according to the terms of the modified contract.

A., the owner of unfinished buildings, entered into a contract with G., whereby the latter contracted to complete the buildings for a certain sum, A. having the right to retain a certain portion of the contract price for ten days after the buildings were finished. G. sublet the plumbing part of the work to W., who in turn sublet a part of his contract to plaintiff. The terms of the payment under the contract between G. and W. were indefinite. Subsequent to such contract, but prior to the contract with plaintiff, a contract was entered into between G. and W., whereby the former agreed to do certain work on a house for the latter's wife, entirely separate from the houses in question, to be paid for by the plumbing work to be done by W. on the houses of A. under the contract with G. Three days after the plumbing work was completed, G. and W. settled and balanced their accounts, G. being

allowed, as a credit, the contract price for the work done on the house of W.'s wife, at that time completed. Plaintiff, twelve days after such settlement, and fifteen days after the completion of his work, filed his lien, there yet being a large sum due G. from A. *Held*, that the two contracts between G. and W. should be construed as one; that plaintiff should have informed himself as to the true condition of the contract; and that, W. having been paid in full under the terms of such contract, plaintiff was not entitled to a lien.

APPEAL from an order of this court at Special Term confirming a referee's report and the judgment thereon.

The facts are stated in the opinion.

*Edward S. Clinch*, for appellants.—It was competent for Garnsey to provide in his first contract with Warren for the payment of the latter in any way that they might agree upon (*Dowdney* v. *McCullom*, 59 N. Y. 367; *Crane* v. *Genin*, 60 N. Y. 127; *Payne* v. *Wilson*, 74 N. Y. 348; *Gibson* v. *Lenane*, 94 N. Y. 187).

It is only to the extent of what is due or is to become due to the sub-contractor upon his contract that the lien can attach (*Lumbard* v. *Syracuse &c. R. Co.*, 55 N. Y. 491).

The right to the enforcement of the lien may be defeated by a payment in good faith before the notice is filed, even if such payment be made before it is due by the terms of the contract (*Schneider* v. *Hobein*, 41 How. Pr. 232; *Carroll* v. *Caughlin*, 7 Abb. Pr. N. S. 72).

The foundation of a claim of a lien is an indebtedness existing upon a contract by the person sought to be charged (*Muldoon* v. *Pitt*, 54 N. Y. 269; *Meyers* v. *Bennett*, 7 Daly 471; *Tiley* v. *Thousand Island House*, 9 Hun 424; *DeRonde* v. *Olmsted*, 47 How. Pr. 175; *Knapp* v. *Brown*, 45 N. Y. 207; *Dixon* v. *LaForge*, 1 E. D. Smith 722; *Gay* v. *Brown*, Id. 725; *Pendleburg* v. *Meade*, Id. 728; *Broderick* v. *Poillon*, 2 E. D. Smith 554; *Quinn* v. *The Mayor &c.*, Id. 558; *Walker* v. *Paine*, Id. 662).

The law was not designed to do injustice, but is for

the promotion of justice; but an unjust and harsh result would follow, if in this case the plaintiff should be permitted to recover (*Spencer* v. *Barrett*, 35 N. Y. 94).

*George B. Gough*, for respondent. — The moneys due upon the contract constitute a fund for the payment of those who furnish labor and materials which enter into and enhance the value of the owner's buildings (*Hoyt* v. *Miner*, 7 Hill 525). The contracts and the payments to become due thereunder constitute the security of the mechanics employed by the contractor, and they furnish work and materials on the faith thereof (*Post* v. *Campbell*, 83 N. Y. 282). And the fund so created can only be diverted from this object, by payments made *bona fide* and in accordance with the terms of the contract (*Crane* v. *Genin*, 60 N. Y. 127; *Payne* v. *Wilson*, 74 N. Y. 348; *Gibson* v. *Lenane*, 94 N. Y. 187; *Jones Lumber Co.* v. *Murphy*, 64 Iowa 166). The mechanic has a right to examine and rely upon the terms of the contracts, under which the fund for his security is accumulated (*Lumbard* v. *Syracuse &c. R. Co.*, 55 N. Y. 494; *Crane* v. *Genin, supra; Jones Lumber Co.* v. *Murphy, supra;* Kneeland on Liens § 130).

The words "liable to pay," in section 1 of the act of 1875, under which this proceeding is had, mean liability to pay by virtue of his contract, "according to its terms" (*Heckmann* v. *Pinkney*, 81 N. Y. 217).

A set-off is not available to an owner or contractor against a sub-contractor to deprive a mechanic of his lien, unless it arise out of the contract itself; as for defective work, abandonment, or the like (*Hoyt* v. *Miner*, 7 Hill 525; *Devlin* v. *Mack*, 2 Daly 94; Kneeland on Liens § 131; *Cheney* v. *Troy Hospital*, 65 N. Y. 282).

As to the buildings and the owner, and the defendant contractor against whom no personal judgment is asked, this is a proceeding *in rem* (*Conkright* v. *Thompson*, 1 E. D. Smith 661; *Randolph* v. *Leary*, 3 E. D. Smith 637; *Quimby* v. *Sloan*, 2 Abb. Pr. 93; *Thompson* v. *Gilmore*, 50 Me. 428; *Homans* v. *Coombe*, 3 Cranch C. Ct. 365).

In actions *in rem*, the burden of proof is thrown upon the owner where the plaintiff has shown a *prima facie* right of recovery (*Cliquot's Champagne*, 3 Wall. 114, and cases there cited).

BOOKSTAVER, J. — This is a proceeding to foreclose a mechanic's lien on premises belonging to the defendant society, situate on the east side of Lexington Avenue, between 107th and 108th Streets, and on the southerly side of 108th Street, east of Lexington Avenue.

The defendant society is a domestic corporation, having its place of business in the City of New York. On the 7th of February, 1885, this society entered into a contract with the defendant Erasmus D. Garnsey, by which the latter agreed to complete six unfinished buildings on the above mentioned premises, for the sum of $16,000, to be paid in instalments, as the work progressed; $2,000, however, to be retained for ten days after the buildings were entirely finished.

One day before this contract was made, the defendant William S. Warren proposed to Garnsey to do the plumbing and gas-fitting work, and to furnish and set the ranges in the six Mission Society houses, for the sum of $700, for each house; or for $4,200, in all. This proposal was accepted in writing by Garnsey, on the 11th of February, 1885.

On the 5th of March, 1885, Warren and Garnsey entered into a written contract, by which the latter agreed to do certain work and furnish material for the completion of a house, belonging to the wife of Warren, and entirely distinct from the six houses before mentioned, being known as 177 East 107th Street, for the sum of $1,600; to be paid for "in suitable instalments of or proportionate amount of plumbing work, etc.," to be done by Warren on the six Mission Society houses, under the contract of the 11th of February, 1885. Afterwards, and on the first day of April, 1885, Warren and the plaintiff Hagan entered into a verbal contract, by which Hagan agreed to furnish and set the

ranges in the six Mission Society houses, called for by the contract of the 11th of February, 1885, for $90 each, or $540 in all.

The plaintiff fully performed his contract to set the ranges, about the 15th day of April, 1885, and there then became due to the plaintiff the sum of $540 from the defendant Warren. Both of the contracts between Warren and Garnsey were fully completed, on or before the 18th day of said April, and there then became due said Warren from Garnsey the sum of $4,200, less the payments in cash, made to Warren, before that time; and less the work, labor, and material supplied by Garnsey to Warren, under the second contract, if that should be deducted from the total amount agreed to be paid under the first contract.

On that day Garnsey and Warren made a settlement and adjustment of their accounts under these contracts, and it was found that Garnsey had theretofore paid to Warren on account of the first contract $2,448.52; that Garnsey had fully performed the work and furnished the materials called for under the second contract, amounting to $1,600, which was then credited on Warren's contract, for the work on the Mission Society houses; and that there was due from Garnsey to Warren the sum of $151.48, which was then and there paid; making the total payments, including the amount allowed for material and work, under the second Garnsey and Warren contract, $4,200; the full amount to be paid by Garnsey to Warren, under the contract of February 11th, 1885. When this settlement was made a receipt in full was taken from Warren by Garnsey.

Twelve days after this settlement and final payment, and fifteen days after the plaintiff had finally completed his work on the Mission Society houses, he filed a notice of a claim of a lien, for the amount due under his contract with Warren, for the ranges; and subsequently commenced an action to foreclose it. At the time of filing the notice of lien, there was due, or to become due from the Mission Society to Garnsey, a sum much larger than the amount claimed by plaintiff.

All of the foregoing facts are found by the referee, or stated in his opinion, and are clearly established by the evidence.

The referee held that the contractor Garnsey and the sub-contractor Warren could not defeat the lien of a workman by setting off, against the contract first entered into between them, the second contract, for the completion of the building known as 177 East 107th Street, and disallowed the item of $1,600 for the work done and materials furnished on that building; and this seems to have been the only question litigated before him. But, upon this appeal, the plaintiff, in addition to supporting the ruling of the referee, claimed that the settlement between Garnsey and Warren was collusive and fraudulent as against him; and it is proper that this question should be first disposed of.

The referee has not found nor was he requested by the plaintiff to find that there was any collusion or fraud in the settlement.

We have examined the evidence, and perhaps Warren has so given his testimony, that an inference of collusion might be drawn therefrom, if it were implicitly relied upon. But the defendant Garnsey directly contradicts the testimony of Warren on this subject, and, we think, is corroborated by the facts in the case, while Warren is not.

Mr. Warren testifies that, before the receipts were exchanged between him and Garnsey, the latter told him his contract with the Home Mission Society was such, that if any lien was placed on the buildings, he could not get his money; and if Hagan should put a lien on the buildings, as he had spoken of doing, he could not get that payment; and that the best way out was to exchange receipts, which would stop Hagan from putting on the lien; and, in that way, he could get the money, and would give it to him; so that he could pay Hagan the amount due him for his ranges.

It is apparent that this version of the matter cannot be correct; for, at that time, Garnsey paid Warren the full amount due him under the contract of February 11th, 1885,

less the $1,600 for work and material under the second contract. This included the $540, due from Warren to Hagan, under the contract between them, and in no other way could the full amount have been made up, and Warren does not claim he has not been paid the full amount due him under the contracts. The settlement was made after all the work, under both contracts, had been done; and in strict conformity with the terms of these contracts, and, as we think, in entire good faith, and without collusion.

The only question remaining is, whether or not the learned referee was right in disallowing the item of $1,600 for the work done by Garnsey, on the house 177 East 107th Street. He held that this item was in the nature of a set-off; and that the amount due to Garnsey, on the contract, could not be applied in the discharge of Garnsey's obligations, under the contract with Warren, for the work on the Mission Society's houses, and regarded the two contracts between Garnsey and Warren as entirely separate and independent building contracts.

It is conceded that a general indebtedness cannot be set off, as against a mechanic, by parties standing between him and the owner (*Hoyt* v. *Miner*, 7 Hill 525; *Devlin* v. *Mack*, 2 Daly 94; *Bullock* v. *Horn*, 5 West. Rep'r 198); and that, if the two contracts between Garnsey and Warren are entirely separate and independent of each other, the claim one of the parties might have against the other, arising out of one contract, would be a general indebtedness, as far as the rights of laborers and material men would be concerned, under the other contract.

But are these two contracts entirely separate and independent of each other?

The first contract was finally made between Garnsey and Warren, by the acceptance of the former, on the 11th of February, 1885, of a proposal made by the latter, before that time.

In this acceptance, Garnsey says: "About payments, I will arrange to give you, according as the work shall proceed, satisfactory instalments."

The second contract between the same parties was entered into on the 5th of March, 1885, by the acceptance of Warren of a proposition, theretofore made by Garnsey, to do certain work on the house 177 East 107th Street, for the sum of $1,600, " to be paid for in suitable instalments of or proportionate amount of plumbing work," etc., to be performed by Warren, on the Mission Society's houses.

This provision, as to payment in work, contained in the second contract, by its very terms, refers to the first contract; and we think, therefore, that the two contracts must be read together; or, at least, that the first contract must be regarded as having added thereto, or inserted therein, that part payment was to be made in work and material upon another building; and the remainder to be paid in cash; especially as the provision for payments, contained in the acceptance of the first contract, was indefinite, and left for future arrangement.

The last of these contracts was made nearly a month before the contract between the plaintiff and Warren; and the referee has so found; although, in his opinion, he seems to have lost sight of this fact, and states that the plaintiff's contract was made before the second contract between Garnsey and Warren, and constructs his argument and draws his conclusions on this error of fact.

It is not necessary for us to determine whether or not a building contract can be modified after sub-contracts have been made under it with mechanics; as that question does not arise in this case.

The question, in this case, is whether a mechanic, having entered into a contract with a sub-contractor, after the original agreement between the sub-contractor and the principal contractor had been modified, can file and enforce a lien for his work, when there has been a settlement and payment in good faith, between the contractor and sub-contractor, of all that is due the latter, according to the terms of the modified contract.

From the evidence we infer that the plaintiff neither saw nor asked to see either of the contracts between Garnsey

and Warren. Nor is it certain, from the evidence, what Warren told him about the contracts he had with Garnsey; although he says he thinks he explained the contract to the plaintiff.

A party furnishing materials or doing work, relying upon the lien given by statute for security, must examine the contract with the owner; for it is only to the extent of what is due or to become due upon this contract, that his lien can attach. If he furnishes the material, or does the work for a sub-contractor, in like reliance, he should not only examine the contract with the owner, but also that of the sub-contractor; for, if the sub-contractor fails to perform his contract, so that nothing becomes payable thereon, or is paid in full, according to its terms, in case of performance, there can be no lien within the principle of *Carman* v. *McIncrow* (13 N. Y. 70) ; *Lumbard* v. *Syracuse &c. R. Co.* (55 N. Y. 491) ; *Crane* v. *Genin* (60 N. Y. 127).

Had he made this examination, the first contract would have shown that the terms of payment were indefinite, which would have led to further inquiry; and this would have revealed the execution of the second contract, by which he would have discovered that part payment of the first contract was to be made in labor and material furnished on another building. Indeed, it was the duty of Warren, when inquired of by the plaintiff, to have informed him of the terms of both contracts; for, at that time, the one modified the other, as we have before shown.

This being the case, Garnsey and Warren had the right, at any time after the completion of both contracts, to make a settlement and payment, in good faith, of the amounts due under them. This they did, on the 18th of April, 1885; twelve days before plaintiff filed his lien. He acquired a specific lien, if ever, when he filed his notice, and not before. Up to that time, he was a general creditor, with no greater equities than other general creditors (*Payne* v. *Wilson*, 74 N. Y. 355). When he did file his notice of lien, it could only attach to the extent of what was due, or to become due to the sub-contractor, upon his contract (*Lum-*

bard v. *Syracuse &c. R. Co., supra*). The plaintiff could not claim more, nor was he entitled to more than a subrogation to the rights of Warren; and as there was nothing due from Garnsey to Warren, when he filed his notice of claim, on the 30th of April, 1885, there was nothing to which plaintiff's claim could attach.

The right to the enforcement of the lien may be defeated by a payment in good faith, before the notice is filed (*Carroll* v. *Coughlin*, 7 Abb. Pr. N. S. 72; *Schneider* v. *Holbein*, 41 How. Pr. 232). The foundation of a lien is an indebtedness existing upon a contract by the person sought to be charged; and as no such indebtedness from Warren to Garnsey existed, at the time of filing the notice, there was no basis for the claim of the plaintiff to rest upon (*Muldoon* v. *Pitt*, 54 N. Y. 269; *Meyers* v. *Bennett*, 7 Daly 471; *Gibson* v. *Lenane*, 94 N. Y. 183).

We are therefore of the opinion that the plaintiff acquired no lien which he could enforce against either of the appellants herein, unless it can be established that it is unlawful, as against material men and laborers, for a sub-contractor to make a contract by which he agrees to receive payment in anything but money. That such a contract between the owner and principal contractor is not unlawful, is clear; for section 1819 of the Consolidation Act, under which these proceedings were begun, contemplates the making of just such contracts, and *Dowdney* v. *McCullom* (59 N. Y. 367), we think, establishes the validity of such a contract between the principal contractor and a sub-contractor; and we can see no difference in principle between these cases and the one under consideration. We think the original contract between Garnsey and Warren, as modified by the agreement of March 5th, was entirely legal and valid as against the plaintiff.

But it is argued that if we affirm the validity of such a contract, as against material men and laborers, we would thereby deprive material men and laborers of their lien upon any of the buildings erected under such contracts. We fail to see the force of this argument; for, if payments

were to be made in money, instead of work and material, and such payments were actually made before the material men filed their notice of lien, such notice would attach nothing, just as in this case. If, on the other hand, Garnsey had made default in doing the work, or furnishing the material, which he was to do, in part payment of Warren's work, then, to the extent of the value of such work and materials not furnished, the plaintiff's lien would have attached, and could have been enforced.

These proceedings were equitable in their nature, and the statutes on which they are founded are to be construed liberally, in order to carry out their intent: but not at the expense of justice. If the defendant, the Mission Society, were compelled to pay plaintiff's claim, it would be entitled to deduct the amount so paid from the total sum to be paid Garnsey, for the entire work upon its houses; for, in no event, could it be required to pay more than the contract price agreed to be given him. This would work injustice to Garnsey; for he performed, in good faith, his contract with Warren, by supplying work and material on the house, 177 East 107th Street, under an agreement which provided that the value of such work and material should be allowed as a payment, on the contract, for the work on the Mission Society's houses, to be done by Warren; and if the plaintiff could now compel Garnsey to pay him for the material and work furnished by him, under his contract with Warren, Garnsey would have to pay for the same work twice; once, in material and work, and the second time, in money. We do not think the law was intended to work such an injustice.

The judgment and order appealed from should be reversed and a new .trial ordered, with costs to the appellants of this appeal.

Having arrived at this conclusion, it is unnecessary to notice the question of the extra allowance granted upon the confirmation of the report, further than to say that this court has decided that the Mechanic's Lien Act does not

authorize the granting of extra allowances (*Rush* v. *Jones*, N. Y. Month. Law Bul. 61).

ALLEN, J., concurred.

LARREMORE, Ch. J., dissented.

Judgment and order reversed and new trial ordered, with costs of appeal to appellants.