(11 Misc. Rep. 397.)

MARSHALL v. COHEN.

(Common Pleas of New York City and County, General Term. February 4, 1895.)

1. MECHANICS' LIENS—WORK AND MATERIAL—KNOWLEDGE OF OWNER.
   Where work is done on, and materials furnished for, a building with the knowledge and consent of the owner, a lien may be obtained therefor though claimant made no contract with the owner.

2. WORK AND LABOR—AGREEMENT TO FURNISH—COMPENSATION.
   One who agrees to furnish labor for another, no price being fixed, is entitled to a profit thereon, and is not limited in his recovery to the amount which he paid the workmen. ·

3. COUNTERCLAIMS—TORT AND CONTRACT.
   An action to foreclose a mechanic's lien, being founded on contract, is not subject to a counterclaim for false representations by plaintiff that he was a competent architect, whereby he induced defendant to accept improper plans, in consequence of which defendant suffered a loss, as such counterclaim sounds in tort.

Appeal from judgment on report of referee.

Action by Albert B. Marshall against Benjamin F. Cohen to foreclose a mechanic's lien. There was a judgment in favor of plaintiff, and defendant appeals. Modified.

Argued before BOOKSTAVER, BISCHOFF, and GIEGERICH, JJ.

David McClure, for appellant.

Edwin B. Smith, for respondent.

BOOKSTAVER, J. This action is brought by the plaintiff to foreclose a mechanic's lien on certain real estate in the city of New York, and recover the balance claimed to be due upon a contract for mason work in building a house and stable on the premises, and for extra work. The defendant interposed a twofold defense: First, he denied the making of any contract with the plaintiff for mason work on his buildings, or the performance of any extra work; and, secondly, he alleges the employment by him of the plaintiff to draw plans and specifications for the erection of the dwelling house and barn, and that the plaintiff named a price as the outside for the house, which cost much more than the plaintiff stated; and also that he did not properly or practically prepare the plans and specifications for the house, and by reason of his dishonesty and incompe-

tency the defendant had been put to a large expense in correcting plaintiff's errors, and suffered damage in the sum of $10,000, which he seeks to counterclaim against the plaintiff. These issues were duly referred by this court, and the referee found in favor of the plaintiff for the full amount claimed, upon which judgment was entered, and this appeal taken. Defendant seeks to reverse the judgment upon the following grounds: (1) Because it is against the weight of the evidence; (2) the allowance of the recovery for extra work was unjustified, in that it was not rendered at defendant's request; (3) the complaint should have been dismissed, and the lien discharged; and (4) because the referee erred in rejecting evidence offered by the defendant to prove the counterclaim set up in the answer.

The first and third of these grounds require an examination of the evidence in the case, and the first question to be determined is whether or not the contract for the mason work on the buildings in question was made with one Bilyeu or with the plaintiff. The complaint, which was duly verified, sets forth that the work was done under a written contract, and his notice of lien contains the same statement. The evidence, however, shows that, if the plaintiff can recover at all, it must be upon a verbal contract or a guaranty by the plaintiff of a contract made by Bilyeu. But the evidence shows that this error was made in a very natural way. The plaintiff had handed to the defendant a paper, which was in reality a guaranty that Bilyeu would do the work; the contents and purport of which he did not recollect. He had an impression that it was an engagement for him to do the work. The plaintiff communicated this impression to his attorney, who drew the complaint accordingly, and also the notice of lien. This error, however, we do not think precludes the plaintiff from a recovery, provided the evidence establishes the fact that he did the work under a verbal agreement with the defendant. The latter claims that there was a contract with Bilyeu, and not with the plaintiff. The evidence shows that specifications were sent out to Ruhl & Stone, Bilyeu, and others. If the copy thus received by Bilyeu was the one put in evidence, it cannot be regarded as a contract, for it does not purport to emanate from anybody, nor was it ever signed by any one. There is no evidence that Mr. Bilyeu ever executed it or assented to it, and there is no evidence in the case of any other contract on Bilyeu's part. The bid made by him and delivered to the plaintiff cannot be regarded as such a contract, and the testimony of the parties negatives the idea of any contract between them. Mr. Bilyeu swears:

"I never made any contract or any agreement with Mr. Cohen to do any work upon that building of any kind, or to do work of any character whatever. * * * I never had any conversation with Mr. Cohen in reference to my doing the work. I never offered Mr. Cohen a bid for the work. I never had any relation with Mr. Cohen in any way in reference to the erecting of the building, so far as the mason work was concerned. And it is a fact that all the work which I did on that building I did under Mr. Marshall as my employer. He paid me."

Mr. Cohen swears, in effect, that all the talk he ever had with anybody about the contract with Mr. Bilyeu was with the plaintiff. He does not claim that anything, either oral or written, ever passed between him and Mr. Bilyeu upon the subject; and testified: .

"I says: 'I will accept Bilyeu's contract under no conditions. You tell me that Bilyeu is a man that drinks; who's got a habit of throwing dice. He is not to be trusted with anything.' And he [Marshall] says, 'I want Bilyeu to do the work, and I will take charge of the whole matter.' "

He also testifies to another discussion of the matter between himself and the plaintiff, in which he expressed his disapprobation of Mr. Bilyeu's character, the plaintiff claiming that Bilyeu was a skillful mason, and ought to be allowed to do the work. After this discussion, according to the defendant's testimony, the plaintiff said, "I will guaranty Mr. Bilyeu's contract for doing the work on that house and stable, if you give it to Mr. Bilyeu, provided you will allow me to handle the money, so Mr. Bilyeu don't get the money to squander;" and he, the defendant, said: "If you will guaranty that contract, I will give it to Bilyeu. Mr. Marshall said he would." As far as the evidence shows, the foregoing conversations were never communicated to Mr. Bilyeu. About two weeks after this conversation the following paper was executed:

"A. B. Marshall, Architect and Builder, 2381 Bainbridge Avenue, near 184th Street.

"New York, April 30th, 1892.

"Mr. B. F. Cohen—Sir: I hereby guaranty Mr. William A. Bilyeu's agreement to do all the mason work, labor, and material necessary to complete your house, N. E. corner Creston avenue and Primrose street, according to plans and specifications for the sum of two thousand three hundred and fifty-five dollars ($2,355.00). It is understood that the above does not include the stone piers of piazza and porte-cochere. All payments to be made to myself.

"Respectfully,                                      A. B. Marshall."

Mr. Bilyeu at one time handed to the plaintiff certain figures at which he said he would do the mason work. This, at most, was but a proposition for a contract. That proposition was never accepted, and it cannot be argued that Bilyeu proposed to do the work for the amount stated, payable to another; nor was the agreement finally concluded for the amount thus stated. Mr. Bilyeu testified:

"Mr. Marshall did say to me that he had guarantied my contract. It was shortly after the estimate was put in. He said Mr. Cohen had agreed for me to go on and do the mason work, and he would take the contract, and be responsible for it. That is the way he informed me about it,—that Mr. Cohen had agreed for me to do the mason work under that estimate."

But this statement cannot overcome the testimony given by him at the commencement of his direct examination, in which he testified, "I never made any contract or agreement with Mr. Cohen;" and at the conclusion of his cross-examination, where he testified, "At that time I did not understand from Mr. Marshall that I had any agreement with Mr. Cohen." The most that can be inferred from all his testimony is that he was to do the mason work, but that the plaintiff was to be responsible to the defendant for it, and was the real contracting party. That there was some contract, oral or written, between the plaintiff and the defendant, whereby the

former was to receive the exact sum he claimed, seems to us clear. Mr. Cohen never personally contracted with any one else for the mason work on these buildings. Plaintiff testifies that the defendant's contract was with him. Mr. Bilyeu testifies it was not with him. Mr. Cohen admits it could not have been with Mr. Bilyeu unless the plaintiff procured Bilyeu's assent to the identical proposition submitted by Mr. Cohen, and both the plaintiff and Bilyeu swear it was never stated to the latter, so that he could not have assented thereto. Mr. Marshall testifies that the defendant asked him, "Why won't you take the contract, and do it yourself?" and plaintiff replied, "I will take it then, and have the payments made to me;" to which the defendant said, "Why, that is all right; go ahead and do it;" and adds, "Then I executed the work, bought the material, and delivered it." It thus appears to our satisfaction that the contract was really made with the plaintiff, and not with Bilyeu. The fact that plaintiff was an architect as well as a builder, although suspicious, does not necessarily preclude him from taking the contract. The fact was known to the defendant. It was at his suggestion that the plaintiff drew the plans and specifications at a fixed sum, and the superintendency of the building was discussed between the parties. But the plaintiff was not to be the sole supervisor of the work; the defendant was also to supervise it. There is no charge in the amount recovered for any services as architect. It is not an infrequent occurrence that the builder also prepares the plans of the building to be erected by him. Nor do we think the fact that various bills and receipts were signed by plaintiff as being "on account of Bilyeu contract," or "account of agreement of William A. Bilyeu for the mason work," etc., conclusive, or even entitled to great weight, under the circumstances of this case. The plaintiff had executed the guaranty before set forth, and therefore had himself undertaken to do the work, and in any case the payments were to be made to him. The evidence clearly establishes the fact that he furnished the material and paid for the labor expended upon the mason work. It is true that the defendant denies much of the testimony of the plaintiff and Bilyeu, before quoted, and there is throughout the case not a little contradiction between the parties. But there was certainly quite sufficient evidence to justify the learned and careful referee who tried the case in coming to the conclusion he did upon the question. He had the witnesses before him, and could better judge of their credibility than we could from a mere reading of the testimony and a comparison of facts, and of the contradictions in the testimony; and in his opinion he says, "As to the making of the contract, I have no doubt whatever." Whatever confusion there may be in regard to the contract, as before stated, the mason work and material on the buildings in question were furnished by the plaintiff with defendant's knowledge and consent, and this is sufficient to maintain the lien. Otis v. Dodd, 90 N. Y. 340; Post v. Campbell, 83 N. Y. 282; Husted v. Mathes, 77 N. Y. 390; Muldoon v. Pitt, 54 N. Y. 272; Mosher v. Lewis (Com. Pl. N. Y.) 31 N. Y. Supp. 433.

As to the recovery for the extra work. The referee finds in his twelfth finding of fact:

"That, in addition to the specified mason work aforesaid, to be done under said contract for said aggregate sum of $2,355, the plaintiff, at the defendant's request, furnished other labor, services, and material in and about the mason, carpenter, and other work in the construction of the defendant's said buildings and appurtenances, of the reasonable value of $223.28, of which the sum of $20 has only been paid to the plaintiff, and there is now due and owing to the plaintiff from the defendant on account of said extra work and materials the principal sum of $203.28."

Here, again, the testimony is conflicting, but it is clear that the plaintiff did this extra work and furnished the material therefor, and that no one has been paid for it; nor, so far as the evidence shows, is there any claim made by any one else than the plaintiff for it. On a careful review of the whole evidence on this subject, we think the referee was fully justified in finding as he did. Defendant objects, however, that plaintiff charged too large a price for the labor spent upon this work. It is urged that he charged $3.50 a day for carpenters, while he really paid them only $3 or $3.25, and that the same was true as to the masons. In answer to this, it may be said that this is the general custom among masons and builders. There was no contract to furnish this labor at a fixed price. The defendant himself had engaged some of the carpenters, and requested the plaintiff to send over others. The compensation to the plaintiff was, by implication of law, to be whatever it was reasonable for him to receive, and it would be neither reasonable nor customary for him to charge for odd jobs just what he paid the men for continuous employment. He was as much entitled to profit upon the labor supplied by him as upon the materials he supplied. He was not bound to furnish either to the defendant at the exact cost to him. Anderson v. Dillaye, 47 N. Y. 679.

The third ground for reversal urged on this appeal is that the complaint should have been dismissed. This is based upon the fact that defendant claims the plaintiff did not substantially perform his contract by doing the work according to the plans and specifications, but that he left out many items, and did others in a way different from that called for by these plans and specifications. After reading the briefs of counsel and the testimony, we concur with the referee in his findings in respect thereto, and for the reasons stated by him in his opinion, and do not think it necessary to review this point at length. It may be added to what the referee has said that the defendant was constantly about the premises while the work was being done, and that he himself frequently suggested changes in respect to the matters complained of, which were done at his request. Moreover, it appears from the evidence that Bilyeu called on several occasions, and asked the defendant if there was anything to be done to complete the mason work, and he replied that there was not.

The fourth ground on which the judgment is attacked, is that the referee erroneously excluded evidence as to the counterclaim set up in the answer. This counterclaim, however, as set forth in

the answer, is grounded on a tort, to wit, the false representation by the plaintiff that he was a competent architect, whereas he was not, by which false pretense of competency the defendant was induced to procure from plaintiff, and to accept, improper plans and specifications he otherwise would not, whereby he suffered loss. This action is founded upon a contract. A counterclaim in tort cannot, therefore, be interposed. Piser v. Stearns, 1 Hilt. 86; Drake v. Cockroft, 4 E. D. Smith, 34; Corrigan v. Ritter (Sup.) 15 N. Y. Supp. 163. Owens v. Ackerson, 1 E. D. Smith, 691, is not in conflict with these decisions. In that case the answer set up as a counterclaim money due to the defendant from the plaintiff for matters not connected with the contract, but arising out of the contract, and, of course, it was properly allowed. But, entirely aside from this consideration, and admitting that the counterclaim could properly be presented, still the questions objected to and the testimony excluded could, in our judgment, have worked no injury to the defendant. They were, if admitted, very far from proving the incompetency of the plaintiff as an architect. It is clear, however, from the computations made by the referee in this case, that there was an error in the result arrived at by him.

| | | |
|---|---:|---:|
| The referee charges the defendant the contract price | $2,355 | 00 |
| Extra work | 223 | 28 |
| Interest | 19 | 46 |
| **Total** | **$2,597** | **74** |

And gives the following credits:

| | | |
|---|---:|---:|
| Payments on account | $1,950 | 80 |
| Omissions to be deducted | 71 | 15 |
| Payment on account of extra work | 20 | 00 |
| Sum stricken from case because plaintiff refused to answer question with respect to it | 10 | 00 |
| **Total** | **$2,051** | **95** |
| Deducted from the former amount, leaves the balance | $ 545 | 79 |

—only due the plaintiff, whereas the referee, in his first conclusion of law, directs judgment against the defendant in the sum of $576.64, which is $30.85 in excess of the amount shown by the tabulation above. The judgment must therefore be modified by reducing the amount allowed to $545.79, and, as thus modified, should be affirmed, but, under the circumstances, without costs. All concur.