(114 App. Div. 450.)

BEHRER et al. v. CITY & SUBURBAN HOMES CO. et al.

(Supreme Court, Appellate Division, First Department.   July 12, 1906.)

MECHANICS' LIENS—ADVANCE PAYMENTS—EFFECT.

Under Mechanic's Lien Law, Laws 1897, p. 517, c. 418, § 7, declaring that any payment by the owner to a contractor, made prior to the time when by the terms of the contract such payment becomes due, for the purpose of avoiding the provisions of the statute, shall be of no effect as against the lien of a subcontractor, laborer, or materialman, etc., a payment made in advance of the time fixed by the contract is to be excluded from calculation in determining the balance for which the owner is liable only when such payment is made for the purpose of avoiding the provisions of the mechanic's lien law.

[Ed. Note.—For cases in point, see vol. 34, Cent. Dig. Mechanics' Liens, § 420.]

Appeal from Special Term, New York County.

Action by Martin Behrer and others against the City & Suburban Homes Company and others.   Judgment for defendants, and plaintiffs appeal.   Affirmed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and CLARKE, JJ.

H. Schieffelin Sayers, for appellant.

Arthur F. Crosby, for respondent.

LAUGHLIN, J.   This is an action to foreclose a mechanic's lien. The defendant City & Suburban Homes Company is the only respondent.   The respondent company was the owner of premises at the northeasterly corner of Avenue A and Seventy-Sixth street, and it was erecting a tenement building thereon.   The contract for the plumbing and gas fitting was let to the defendant McMillan, by whom the plaintiffs were employed as subcontractors.   The plaintiffs sold and delivered to McMillan materials and supplies of the value of $12,224.95, which were used in the performance of his contract with the owner, and were paid on account the sum of $6,278.99.   Within 90 days after furnishing the material, and on the 18th day of June, 1903, the plaintiffs duly filed a notice of lien for the balance of $5,945.96 owing to them.   This action is brought to foreclose that lien.   The entire contract price of the work to be performed by McMillan was $26,190, and it is admitted that he performed extra work of the value of $180, making his aggregate claim $26,370.   The contract provided that the respondent should pay McMillan "in monthly payments, as the work progressed, reserving 15 per cent. until final completion and acceptance of the work by Sturgis & Hill Co.," and that Sturgis & Hill Co., who were the superintendents, should certify in writing "in each case that the contractor is entitled to such payment."   The contract further provided that at the time of making the last two payments satisfactory proof shall be furnished to the owner that the land and building upon or for which the work is done are free from all liens or claims on account of said work.   On the 1st day of June, 1903, the superintendents recommended a partial payment to McMillan of $1,275 under the contract, but this was not paid, nor was any payment made on the contract

thereafter. At that time, but for the advance payments, which will be considered presently, there would have been a balance of $7,049.15 unpaid on the contract. A few days after the superintendents recommended the payment of $1,275, the contractor abandoned the work, and the owner completed it at a cost of $1,498.94. The contract contained the usual provision that in the event of the failure of the contractor to proceed with due diligence the owner might take possession of the work, and complete the same at the expense of the contractor. In these circumstances, if no payment had been made in advance of its being earned under the contract, the owner would have owed the contractor the difference between the said balance of $7,049.15, which would have been unpaid, and $1,498.94, the cost of completion, or $5,730.21; consisting of $3,928.50, the 15 per cent. reserved, $180 for extra work, and $1,621.71 a surplus of work done over the monthly estimates of the superintendents. The owner, however, with a view to expediting the work of McMillan, who was hard pressed for money, and seemed to be falling behind in his work, which delayed other work, had made further payments from time to time between the monthly payments and before the plaintiffs filed their lien, leaving only $819.34 unpaid at that time, which was less than the amount necessarily expended by the owner in completing the work.

The plaintiffs were familiar with the provisions of the contract between the owner and McMillan, and they relied upon 15 per cent. of the contract being reserved by the owner until final completion. They had discussed the matter with the superintendents, who had filed notice of their claim, and promised to protect them and advise them from time to time of the certificates issued for partial payments. The appellants claim that the superintendents were the authorized agents of the owner, as they were supervising the work, and no other architect was employed. The plaintiffs, however, were informed by the superintendents that they had no authority to represent the owner with respect to agreeing that they would be protected in the payments to be made on the contract, and they were advised by the superintendents to communicate directly with the owner on that point, which they failed to do. The plaintiffs claim that the advance payments were made for the purpose of avoiding the provisions of the mechanic's lien law, and that in determining what amount, if any, was due and owing by the owner to the contractor at the time the lien was filed, or at any time thereafter, such advance payments should be left out of the account. This claim is based on section 7 of the Mechanic's Lien Law (chapter 418, p. 517, Laws 1897), which provides as follows:

"Any payment by the owner to a contract for the improvement of real property, made prior to the time when, by the terms of the contract, such payment becomes due, for the purpose of avoiding the provisions of this article, shall be of no effect as against the lien of a subcontractor, laborer or materialman under such contract, created before such payment actually becomes due."

The Mechanic's Lien Law of 1862 (section 1, c. 478, p. 947, Laws 1862) provided, in substance, that any payment made on a building contract "by collusion, for the purpose of avoiding the provisions of this act, or in advance of the terms of any contract," should not be con-

sidered as against a lienor in determining the amount due and owing on the contract at the time of filing notice of lien.

The Lien Law of 1885 (section 2, c. 342, p. 585, Laws 1885), so far as material to the present inquiry, provided that if the owner "shall for the purpose of avoiding the provisions of this act or in advance of the terms of any contract, pay by collusion any money or other valuable thing on such contract, or give a mortgage or make any other lien or incumbrance" upon the property upon which the improvement was made, the same should not, as against a lienor, be considered in determining the liability of the owner. The same provision was continued in said section 2 as amended by chapter 673, p. 454, of the Laws of 1895.

It will be observed that the provisions of the former statute were materially different from the provision of the statute in force at the time this lien was filed. The mechanic's lien law of 1862, in addition to prohibiting payments by collusion, clearly provided that no payment in advance of the time the same became due under the contract should be allowed as against a lienor, regardless of whether such payment was made by collusion, or whether it was intended as an evasion of the lien law. Post et al. v. Campbell et al., 83 N. Y. 279. The decisions are conflicting on the question as to whether by the change in phraseology contained in the mechanic's lien law of 1885 the Legislature intended to change the legal effect of the statute in this regard. Banham v. Roberts, 78 Hun, 246, 28 N. Y. Supp. 828; H. B. C. Co. v. N. Y. C. & H. R. R. Co., 145 N. Y. 390, 40 N. E. 86, holding no change. Contra, Smack v. Cathedral of the Incarnation, 31 App. Div. 559, 52 N. Y. Supp. 168; Lind v. Braender, 15 Daly, 370, 7 N. Y. Supp. 664. The present statute, however, does not provide that all payments made in advance shall, as against the lienor, be excluded from the calculation in determining the balance for which the owner is liable, but only when such payments are made "for the purpose of avoiding the provisions" of the mechanic's lien law, which necessarily involves proof of bad faith or collusion on the part of the owner in making the payments in advance, or, what is tantamount thereto, payment with notice, actual or constructive, of the claim of the laborer or materialmen who subsequently file liens. Matter of Smith, 20 App. Div. 510, 47 N. Y. Supp. 49; Wolf v. Mendelsohn (Sup.) 87 N. Y. Supp. 465.

In the case at bar there is no evidence of bad faith or collusion on the part of the owner, or that it knew that the plaintiffs were furnishing any material or supplies for the building. The trial court has found, and the evidence warrants the finding, that the owner was not aware that the plaintiffs had any claim against McMillan, and that the advance payments were not made for the purpose of avoiding the provisions of the lien law. The president of the owner testified that McMillan was behind with his work, and that this delayed other contractors; that McMillan applied to him to make payments in advance of the monthly certificates of the superintendents, and that in making such payments the company did not intend to advance more than the contract price of the work actually performed. The appellants point to the testimony on the part of the president of the owner to the effect

that in making these advance payments he was willing to take some risk, and claim that it shows knowledge on his part of the risk of claims of lienors. That, however, is not the fair inference from his testimony. It is quite clear that he did not have in mind that there might be claims of third parties, and that he was merely referring to the risk the company was taking in paying McMillan more than he earned, and of having the work abandoned before completion.

The appellants also cite the case of Kane v. Kinney, 174 N. Y. 69, 66 N. E. 619, as authority for the proposition that they acquired an inchoate interest in the premises, which was perfected by filing the lien. That case is not in point. It was there merely held that, as against an assignee for the benefit of creditors of the contractor, the assignee stands in the shoes of the assignor, and takes the property subject to the right of laborers and materialmen to file liens within the time prescribed by the statute, and the same rule has since been applied as between lienors and a trustee in bankruptcy of the contractor. Crane Co. v. Pneumatic Signal Co., 94 App. Div. 53, 87 N. Y. Supp. 917, affirmed 182 N. Y. 545, 75 N. E. 1128.

It follows, therefore, that the judgment should be affirmed, with costs. All concur.