GLENS FALLS PORTLAND CEMENT CO. v. SCHENECTADY COUNTY
COAL CO. et al.

(Supreme Court, Trial Term, Schenectady County.  December 2, 1913.)

1. MECHANICS' LIENS (§ 115*)—RIGHT TO LIEN.
Where the owner paid a contractor with knowledge that materialmen
had not been paid, trusting to the contractor's promise to discharge those
obligations, the materialmen may enforce a mechanic's lien on the prem-
ises for all amounts due at the time of the payment, for such a payment
cannot be said to be in good faith.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 150–159;
Dec. Dig. § 115.*]

2. MECHANICS' LIENS (§ 115*)—ENFORCEMENT—RIGHT TO ENFORCE.
Where materialmen were entitled to a mechanic's lien for materials fur-
nished up to the time of the payment of the contractor, the fact that some
of the liens included claims accruing thereafter will not preclude the en-
forcement of the valid claims, where it did not appear that any of the
liens were filed with fraudulent intent.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 150–159;
Dec. Dig. § 115.*]

3. MECHANICS' LIENS (§ 115*)—RIGHT TO LIENS—PAYMENT.
Lien Law (Consol. Laws 1909, c. 33) § 7, providing that any payment
by the owner, prior to the time it is due under the contract, for the pur-
pose of avoiding the Lien Law, shall be of no effect, is not intended to
prevent an owner from modifying or terminating the contract, and hence
advance payments by the owner prior to the time due under the contract,
when not made for the purpose of avoiding the statute, protect him
against liens.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 150–159;
Dec. Dig. § 115.*]

4. MECHANICS' LIENS (§ 102*)—RIGHTS OF MATERIALMEN.
Under the Lien Law (Consol. Laws 1909, c. 33), materialmen and la-
borers have the right to see the contract under which the work is being
done so as to provide for their own protection.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 134;  Dec.
Dig. § 102.*]

5. MECHANICS' LIENS (§ 115*) — ENFORCEMENT OF LIEN — PAYMENTS — GOOD
FAITH.
One who furnishes materials to a contractor knowing that the owner
has paid for the work cannot attack the good faith of the owner in mak-
ing the payment so as to establish a lien against the property.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 150–
159;  Dec. Dig. § 115.*]

6. MECHANICS' LIENS (§ 115*)—PAYMENTS—GOOD FAITH.
That a contractor was importuning the president of a corporation for
money, asking for payment in advance so as to pay off a few pressing
creditors, will not render an advance payment unavailing as against la-
borers and materialmen who furnished materials and performed labor
after the payment; it not appearing that the defendant corporation knew
that any of the lienors were to furnish labor or materials after the pay-
ment.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 150–
159;  Dec. Dig. § 115.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by the Glens Falls Portland Cement Company against the Schenectady County Coal Company and others to foreclose a mechanic's lien. Foreclosure granted.

Loucks & Alexander, of Schenectady, for plaintiff.

Edgar T. Brackett and Luther A. Wait, both of Saratoga Springs, for defendant Schenectady County Coal Co.

Nathaniel B. Spalding, of Schenectady, for defendant David Mahoney Co.

George H. Smith, of Schenectady, for defendant Holland Sand Co.

John J. McMullen, of Schenectady, for defendants Edmond Collins and labor lienors.

Grant Stanford, of Schenectady, for defendant Miller Bros.

George G. Schieffelin, of Schenectady, for defendants Knapp & Hotchkiss Co. and another.

Frank Cooper, of Schenectady, for defendant Craig & Vrooman.

Countryman, Nellis, Du Bois & McDermott, of Albany, for defendants Welsh & Grey.

George J. Hatt, 2d, of Albany, for defendant Callanan Road Imp. Co.

George Lawyer, of Albany, for defendant Raymond M. Booth.

BORST, J. The plaintiff brings this action to foreclose a mechanic's lien against the defendant Schenectady County Coal Company.

On the 16th day of September, 1911, the defendant Booth entered into a contract with the defendant coal company to construct, at different places in the city of Schenectady, N. Y., five re-enforced concrete coal pockets according to certain specifications. There was one large pocket, which was to be completed ready for installation of machinery January 1, 1912, and ready for occupancy a month later; the others are called "small pockets" and were to be ready for machinery May 1, 1912, and fully completed June 1, 1912. The contract price for the work, $75,000, was to be paid, 85 per cent. of the estimated amount of work done and materials purchased during a given month and approved by the architect. The final payment of 15 per cent. was to be made within 31 days after the completion of the work. Before final payment, the contractor was to furnish to the coal company a bond, in the penal sum of $18,750, conditioned that the contractor, Booth, would keep all the coal pockets in repair for a period of one year from the date of their completion.

Shortly after the making of the contract, defendant Booth entered upon the performance of the contract, when it was found that the large coal pocket would require a concrete mat under it. This he constructed at a cost of $7,209.36, which was allowed him as extra work. The construction of this mat delayed the contractor in his work and was treated by the parties as an extension of his time for its completion.

A large part of the work was uncompleted in March, 1912. The coal company had paid to Booth on and prior to March 8, 1912, $62,-714.36, the cost of the extra work in putting in the concrete mat and on account of work done under the contract. About the latter date, the parties agreed that the coal company should pay to Booth immediately

the sum of $19,995, the balance of the contract price, and that Booth should give a bond in the sum of $20,000 conditioned that if he should in all respects comply with and perform the terms and conditions of their contract, except the time for its performance was extended to June 1, 1912, then such bond to be void, otherwise to remain in full force and effect. Booth executed the bond, and on March 18, 1912, it was delivered to the coal company. On March 19, 1912, the coal company paid to Booth $15,000, and on March 26th the further sum of $4,995, the balance of the contract price. Booth continued the work until June 13, 1912, when he filed a petition in bankruptcy. At the time Booth quit work on June 13, 1912, the work done under the contract had cost him about $87,000.

The surety company claims to have completed the work at an expense of $8,000, while the coal company contends there was left about $2,000 of work undone.

Prior to the giving of the bond and the advance payments being made, Booth furnished the officers of the coal company at their request a statement purporting to contain the names of those who had furnished labor or materials, with the amounts unpaid incurred on account of the contract and the total of which aggregated $3,959. In this list appears the names of Knapp & Hotchkiss, Collins Bros., Miller Bros., Holland Sand Company, defendants in this action, and the Glens Falls Portland Cement Company, the plaintiff, who have filed liens. The plaintiff's claim in the list, however, appears to be $579.40. The secretary and general manager of the coal company on receiving this list advised with the plaintiff and was informed that the latter's claim was $1,358.40 against Booth. At the same time, he advised the president of the plaintiff company that "we (coal company) were going to pay him (Booth) in full the next day or two." In the list Booth furnished the coal company also appears the name of the defendant Frank Anker, who has filed a lien for material furnished after March 26, 1912.

At or prior to the time of the advance payments being made to Booth, he advised the officers of the coal company that he would pay the claims included in the list which he had presented. The coal company had notice at the time of the advance payments that the David Mahoney Company, a defendant lienor in this action, had been furnishing Booth materials for work to be done under the contract and for which that company had not been paid in full.

[1] I am of the opinion that the plaintiff is entitled to enforce its lien by a foreclosure to the amount due on it on the 26th of March, 1912, and that the defendants lienors are entitled to the payment of the amount due on each of their liens on that date.

[2] The defendant coal company had knowledge of the claims of these lienors at that date and made the advance payments with such knowledge. Such payments cannot be said, under the circumstances, to have been made in good faith. The situation required that the coal company should see that the amounts due and of which it had knowledge when it made the advance payments were paid and not trust to the uncertainty of Booth's promise to pay them. The fact that some of these liens include claims which occurred after March 26, 1912, and

hence in excess of the amounts allowed, does not prevent their enforcement for the amounts due on that date, as it does not appear that any of the liens were filed with fraudulent intent for larger amounts than is allowed under this decision. Donovan v. Frazier, 15 App. Div. 521, 43 N. Y. Supp. 533; Gaskell v. Beard, 58 Hun, 101, 11 N. Y. Supp. 399.

[3] Amounts included in the liens, however, which occurred for labor or materials after the 26th of March, 1912, cannot be allowed, nor liens which were filed for labor and materials furnished wholly after that date. Payments by an owner upon a contract made prior to the time when by the terms of such contract such payment becomes due, for the purpose of avoiding the provisions of the lien law, are of no effect as against the lien of a laborer or materialman under such contract created before such payment actually becomes due. Section 7, Lien Law (Consol. Laws 1909, c. 33). Advance payments, therefore, must have been made for the purpose of avoiding the provisions of the Lien Law to prevent their allowance to the owner as against a lien. It is only when the advance payments have been made with the purpose to avoid the statute that they are held to be invalid, and the burden of proving that such payments were made in bad faith is on the lienor who asserts it. Hudson River Blue Stone Co. v. Huntington, 143 App. Div. 99, 102, 128 N. Y. Supp. 25.

The provisions of the Lien Law, it has been held, were not intended to prevent an owner from modifying or terminating his contract or facilitating his work by a payment earlier than the contract stipulated. Wagner v. Butler, 155 App. Div. 425, 140 N. Y. Supp. 50.

[4] In the instant case there is no evidence which warrants a finding of bad faith or collusion on the part of the coal company as to the claims for labor and material furnished after March 26, 1912. The lienors had the right under the provisions of the Lien Law to see the contract; but, so far as the evidence discloses, none of them exercised that right. They also had the right to be advised of the amount, if any, unpaid Booth on the contract, and to be advised as to the condition of the account between the contracting parties. None of them exercised this right, however. They furnished labor and materials to Booth after March 26th, apparently relying on his credit and without any attempt to protect themselves against loss until his failure.

[5] The plaintiff had notice, as we have seen, that Booth was to be paid in full, and the material which it furnished after the 26th of March was furnished with such notice. With knowledge that the contract price had been paid to the contractor, it is not in a situation to urge bad faith on the part of the coal company in paying him as against its claims for material furnished after it had such knowledge.

[6] The fact that the contractor, Booth, was pressing the coal company for money in advance of the time at which he was entitled to it, that the bond was given to secure the coal company for the completion of the work, that the officers of the company knew that Booth was pressed by a few creditors and that some 10 or 12 parties had claims, and that he annoyed the president of the company by his importunities for money, is not sufficient to show bad faith or collusion on the part

of the officers of the coal company as against claims incurred after the advance payments were made. There is no suggestion in the evidence that these officers knew that any of the defendant lienors were to furnish further labor or materials at the time of the advance payments, and, in fact, it does not appear that they were under contract to do so. The case comes clearly within Behrer v. McMillan, 114 App. Div. 450, 100 N. Y. Supp. 35, affirmed 191 N. Y. 530, 84 N. E. 1108.

It is unfortunate that these materialmen, and especially laborers, should lose; but the fault is with the contractor, Booth, and not with the coal company under the statute and the decisions.

A decision may be submitted in accord with this opinion, which will be settled on notice.