THE GLENS FALLS PORTLAND CEMENT COMPANY, Plaintiff, *v.* SCHENECTADY COUNTY COAL COMPANY, RAYMOND M. BOOTH et al., Defendants.

(Supreme Court, Schenectady Trial Term, January, 1914.)

Liens — Lien Law, § 7 — provisions of Lien Law — advance payments made to avoid statute — contract for construction of coal pockets — action to foreclose material-man's lien — when lienors are entitled to enforce liens for amount due on each — bond given to secure coal company for completion of work.

The provisions of the Lien Law were not intended to prevent an owner from modifying or terminating his contract, or to facilitate the work by a payment earlier than was stipulated by the contract.

Under section 7 of the Lien Law payments by an owner on a contract, made prior to the time when by its terms they became due, for the purpose of avoiding the provisions of the statute, are of no effect as against the lien of a laborer or material-man created before such payment actually becomes due.

It is only when the advance payments have been made with intent to avoid the statute that they are invalid, and the burden of proving that they were made in bad faith is on the lienor asserting the fact.

The contract price for the construction of certain coal pockets by defendant B. for the defendant coal company was $75,000. In an action to foreclose a material-man's lien it appeared that a large part of the work contemplated by the contract was uncompleted in March, 1912; that prior to the

eighth of said month the coal company had paid B. $62,714.36, the cost of certain extra work and on account under the contract, and that about said date it was agreed that the coal company should immediately pay B. $19,995, the balance of the contract price, and that he should give a bond for $20,000 conditioned for his faithful performance of the contract. After B. had delivered the bond, and after payment to him on March 26, 1912, of the balance of the contract price, he continued the work until he filed a petition in bankruptcy in June, 1912, the work under the contract having cost him $87,000. Prior to the giving of the bond and the advance payments B., at the request of the officers of the coal company, furnished a list of those who had furnished labor or materials with the amounts unpaid incurred on account of the contract. Plaintiff's claim was listed as $579.40, and when the secretary and general manager of the coal company was informed that plaintiff's claim against B. was $1,358.40 he advised its president that the coal company was going to pay B. in full the next day or two. The surety company claimed to have completed the contract at an expense of $8,000, while the coal company contended there was left about $2,000 of work undone.

Held, that plaintiff and defendant lienors were entitled to enforce their liens for the amount due on each on March 26, 1912.

That the advance payments made by defendant coal company with knowledge of the claims of lienors on said date were not in the circumstances made in good faith.

The fact that some of the liens included claims which accrued after said date did not prevent their enforcement for the amounts due on said date, it not appearing that any lien was filed with fraudulent intent for larger amounts than allowed herein.

That plaintiff, with notice and knowledge that B. was to be paid in full, was not in a position to urge bad faith on the part of the coal company in paying him, as against its claims, for materials thereafter furnished.

The fact that B. was pressing the coal company for money in advance of the time to which he was entitled to it; that the bond was given to secure the coal company for the completion of the work; that the officers of the company knew that B. was pressed by a few creditors and that he annoyed the president of the company by his importunity for money; was

Supreme Court, January, 1914.        [Vol. 83.

not sufficient to show bad faith or collusion on the part of the officers of the coal company as against claims incurred after the advance payments were made.

ACTION to foreclose a mechanic's lien.

Loucks & Alexander, for plaintiff.

Edgar T. Brackett, for defendant coal company.

Nathaniel B. Spalding, for defendant David Mahoney Company.

J. J. McMullen, for Edmund Collins and labor lienors.

Grant L. Stanford, for Miller Bros.

Frank Cooper, for Craig & Vrooman.

Geo. H. Smith, for Holland Sand Company and Frank Anker.

Geo. G. Schieffelin, for defendant Knapp & Hotchkiss Company.

Countryman, Nellis, Du Bois & McDermott, for Welsh & Gray.

Luther A. Wait, for Devenpeck Coal Company.

Geo. Lawyer, for defendant Booth.

Geo. J. Hatt, 2d, for Callanan Road Improvement Company.

Neile F. Towner, for bonding company.

BORST, J.   The plaintiff brings this action to foreclose a mechanic's lien against the defendant Schenectady Coal Company.

On the 16th day of September, 1911, the defendant Booth entered into a contract with the defendant coal company to construct, at different places in the city of Schenectady, N. Y., five reenforced concrete coal pockets according to certain specifications.  There was one large pocket, which was to be completed ready for installation of machinery January 1, 1912, and ready for occupancy a month later; the others are called small pockets and were to be ready for machinery May 1, 1912, and fully completed June 1, 1912.  The contract price for the work, $75,000, was to be paid, eighty-five per cent. of the estimated amount of work done and materials purchased during a given month and approved by the architect.  The final payment of fifteen per cent. was to be made within thirty-one days after the completion of the work.  Before final payment, the contractor was to furnish to the coal company a bond, in the penal sum of $18,750, conditioned that the contractor Booth would keep all the coal pockets in repair for a period of one year from the date of their completion.

Shortly after the making of the contract defendant Booth entered upon the performance of the contract, when it was found that the large coal pocket would require a concrete mat under it.  This he constructed at a cost of $7,209.36, which was allowed him as extra work.  The construction of this mat delayed the contractor in his work and was treated by the parties as an extension of his time for its completion.

A large part of the work was uncompleted in March, 1912.  The coal company had paid to Booth on and prior to March 8, 1912, $62,714.36, the cost of the extra work in putting in the concrete mat and on account of

work done under the contract. About the latter date, the parties agreed that the coal company should pay to Booth immediately the sum of $19,995, the balance of the contract price, and that Booth should give a bond in the sum of $20,000, conditioned that if he should in all respects comply with and perform the terms and conditions of their contract, except that the time for its performance was extended to June 1, 1912, then such bond to be void, otherwise to remain in full force and effect. Booth executed the bond and on March 18, 1912, it was delivered to the coal company. On March 19, 1912, the coal company paid to Booth $15,000 and on March twenty-sixth the further sum of $4,995, the balance of the contract price. Booth continued the work until June 13, 1912, when he filed a petition in bankruptcy. At the time Booth quit work on June 13, 1912, the work done under the contract had cost him about $87,000.

The surety company claims to have completed the work at an expense of $8,000, while the coal company contends there was left about $2,000 of work undone.

Prior to the giving of the bond and the advance payments being made, Booth furnished the officers of the coal company at their request a statement purporting to contain the names of those who had furnished labor or materials, with the amounts unpaid incurred on account of the contract, the total of which aggregated $3,959. In this list appear the names of Knapp & Hotchkiss, Collins Bros., Miller Bros., Holland Sand Company, defendants in this action and the Glens Falls Portland Cement Company, the plaintiff, who have filed liens. The plaintiff's claim in the list, however, appears to be $579.40. The secretary and general manager of the coal company on receiving this list advised with the plaintiff and was informed that the latter's claim was $1,358.40 against

Booth.  At the same time, he advised the president of the plaintiff company that " we [coal company] were going to pay him [Booth] in full the next day or two." In the list Booth furnished the coal company also appears the name of the defendant Frank Anker, who has filed a lien for material furnished after March 26, 1912.

At or prior to the time of the advance payments being made to Booth he advised the officers of the coal company that he would pay the claims included in the list which he had presented.

The coal company had notice at the time of the advance payments that the David Mahoney Company, a defendant lienor in this action, had been furnishing Booth materials for work to be done under the contract and for which that company had not been paid in full.

I am of the opinion that the plaintiff is entitled to enforce its lien by a foreclosure to the amount due on it on the 26th of March, 1912, and that the defendant lienors are entitled to the payment of the amount due on each of their liens on that date.

The defendant coal company had knowledge of the claims of these lienors at that date and made the advance payments with such knowledge.  Such payments cannot be said under the circumstances to have been made in good faith.  The situation required that the coal company should see that the amounts due and of which it had knowledge when it made the advance payments were paid and not trust to the uncertainty of Booth's promise to pay them.  The fact that some of these liens include claims which occurred after March 26, 1912, and hence in excess of the amounts allowed, does not prevent their enforcement for the amounts due on that date, as it does not appear that any of the liens were filed with fraudulent intent for

larger amounts than is allowed under this decision. *Donovan* v. *Frazier,* 15 App. Div. 521; *Gaskell* v. *Beard,* 58 Hun, 101.

Amounts included in the liens, however, which occurred for labor or materials after the 26th of March, 1912, cannot be allowed, nor liens which were filed for labor and materials furnished wholly after that date. Payments by an owner upon a contract made prior to the time when by the terms of such contract such payment becomes due, for the purpose of avoiding the provisions of the Lien Law, are of no effect as against the lien of a laborer or material-man under such contract created before such payment actually becomes due. Lien Law, § 7. Advance payments, therefore, must have been made for the purpose of avoiding the provisions of the Lien Law to prevent their allowance to the owner as against a lien. It is only when the advance payments have been made with the purpose of avoiding the statute that they are held to be invalid, and the burden of proving that such payments were made in bad faith is on the lienor who asserts it. *Hudson River Blue Stone Co.* v. *Huntington,* 143 App. Div. 99, 102.

The provisions of the Lien Law, it has been held, were not intended to prevent an owner from modifying or terminating his contract or facilitating his work by a payment earlier than the contract stipulated. *Wagner* v. *Butler,* 155 App. Div. 425.

In the instant case there is no evidence which warrants a finding of bad faith or collusion on the part of the coal company as to the claims for labor and material furnished after March 26, 1912. The lienors had the right under the provisions of the Lien Law to see the contract, but so far as the evidence discloses none of them exercised that right. They also had the right to be advised of the amount, if any, unpaid Booth on

the contract and to be advised as to the condition of the account between the contracting parties. None of them exercised this right, however. They furnished labor and materials to Booth after March twenty-sixth, apparently relying on his credit and without any attempt to protect themselves against loss until his failure.

The plaintiff had notice, as we have seen, that Booth was to be paid in full, and the material which it furnished after the twenty-sixth of March was furnished with such notice. With knowledge that the contract price had been paid to the contractor, it is not in a situation to urge bad faith on the part of the coal company in paying him as against its claims for material furnished after it had such knowledge.

The fact that the contractor Booth was pressing the coal company for money in advance of the time at which he was entitled to it; that the bond was given to secure the coal company for the completion of the work; that the officers of the company knew that Booth was pressed by a few creditors and that some ten or twelve parties had claims and that he annoyed the president of the company by his importunities for money, is not sufficient to show bad faith or collusion on the part of the officers of the coal company as against claims incurred after the advance payments were made. There is no suggestion in the evidence that these officers knew that any of the defendant lienors were to furnish further labor or materials at the time of the advance payments and in fact it does not appear that they were under contract to do so. The case comes clearly within *Behrer* v. *McMillan,* 114 App. Div. 450; affd., 191 N. Y. 530.

It is unfortunate that these material-men and especially laborers should lose, but the fault is with

the contractor Booth and not with the coal company under the statute and the decisions.

A decision may be submitted in accordance with this opinion, which will be settled on notice.

Judgment accordingly.